# STATE OF MICHIGAN

# COURT OF APPEALS

LORA L. THAXTON, M.D.,

        Plaintiff-Appellant,

v

KEVIN W. BLANCHARD,

        Defendant-Appellee.

UNPUBLISHED
December 6, 2016

No. 327545
Monroe Circuit Court
LC No. 08-032453-DM

Before: TALBOT, C.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

In this divorce matter, plaintiff, Lora L. Thaxton, M.D., appeals as of right the trial court's order regarding child support. In the same order, the trial court found Thaxton in contempt and ordered her to pay attorney fees and expert witness fees incurred by defendant, Kevin W. Blanchard, litigating the issue. We affirm.

## I. CHILD SUPPORT

Thaxton first argues that the trial court clearly erred when it found her income for purposes of child support was $154,478.90 in the year 2013. We disagree. "Generally, child support orders . . . are reviewed for an abuse of discretion."[1] But "factual findings underlying the trial court's decisions are reviewed for clear error."[2]

In this case, the trial court had previously entered an order requiring the parties to submit their tax returns to the Friend of the Court (FOC) annually, which the FOC would use to recalculate child support each year. Thaxton's 2013 tax returns stated income, after deductions, of approximately $55,000; Blanchard's income was approximately $70,000. Based on these tax returns, the FOC found that Blanchard should pay $73 monthly in child support for the parties' two children. Blanchard objected to the FOC's recommendation. Blanchard believed that Thaxton, a doctor licensed to practice in six states and who owned her own practice, had voluntarily reduced her income in 2013, making it proper to impute income to Thaxton.

---

[1] *Clarke v Clarke*, 297 Mich App 172, 178-179; 823 NW2d 318 (2012).

[2] *Id*. at 179.

After a long discovery process,[3] the trial court held an evidentiary hearing. Thaxton testified that she accurately reported her income in her tax returns. Karl Haiser, a certified public accountant and expert in forensic accounting, testified that this was not the case. After reviewing Thaxton's bank statements and comparing what he discovered to Thaxton's tax returns, Haiser determined that Thaxton had underreported her income by nearly $100,000 in 2013. The trial court found Haiser's testimony credible. The trial court ordered the FOC to recalculate the child support obligation using Haiser's figure of $154,478.90 as Thaxton's income for 2013. As a result, Thaxton was ordered to pay approximately $900 a month in child support.

Thaxton argues that Haiser's analysis was flawed because he did not consider her business expenses, which are deductible from her income. Thaxton is incorrect. Haiser began with Thaxton's own tax returns, which, as Thaxton testified, included her business expenses as deductions. After examining the bank records and finding additional, unreported income, Haiser added the amount of unreported income to the final number reached by Thaxton. Thus, in both Thaxton's returns and in Haiser's analysis, Thaxton's business deductions were taken into account, and in the precise amount reported by Thaxton.[4]

The remainder of Thaxton's argument goes to whether the trial court erred by finding Haiser credible, and Thaxton not believable. This Court defers to the trial court on matters of credibility, as the trial court is able to see and hear the witnesses that testify before it, and thus, is in a much better position to make such determinations.[5] Thaxton presents no reason to deviate from this well-accepted principle.

We also note that in her brief on appeal, Thaxton makes a number of false factual assertions. She contends that the trial court was "unaware of the prior order" requiring the parties to submit tax information to the FOC each year for a determination of child support. But the trial court was very aware of the existence of the order. In fact, the trial court quoted this very order at length in its opinion after the evidentiary hearing. Thaxton claims that Haiser had "never performed accounting services for a medical practice[.]" Haiser testified that in his accounting practice, two of his clients were medical practices.

Thaxton also notes that Haiser did not have the benefit of reviewing "tax returns or profit and loss statements for" her business. But she omits to mention that she repeatedly informed the trial court that she had provided all of her tax returns to Blanchard, and she testified that the tax information and bank records she provided were all that was needed to determine her income.[6]

---

[3] The discovery process is discussed in more detail in Part II of this opinion.

[4] It is unclear how Thaxton could have any confusion regarding this issue. At the evidentiary hearing, Haiser specifically explained to the trial court and to Thaxton that his calculations took Thaxton's business expenses into account, and that he "accepted her expenses as reported."

[5] *Butler v Simmons-Butler*, 308 Mich App 195, 200; 863 NW2d 677 (2014); *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011).

[6] As Thaxton testified at the evidentiary hearing:

Thus, according to Thaxton's own testimony, these profit and loss statements were not relevant.[7] Thaxton also implies that the trial court punished her for proceeding without counsel. Nothing in the record would suggest that this is true. Rather, the trial court gave Thaxton considerable leeway and many opportunities to comply with its orders. In sum, none of Thaxton's arguments are credible, and all are without merit.

## II. CONTEMPT REGARDING DISCOVERY

Thaxton next contends that the trial court abused its discretion when it found her in contempt and sanctioned her for violating several discovery-related orders. We disagree. A trial court's issuance of a contempt order is reviewed for an abuse of discretion.[8] Issues of law related to the contempt decision are reviewed de novo.[9]

As this Court has explained:

> There is inherent power in the courts, to the full extent that it existed in the courts of England at the common law, independent of, as well as by reason of statute, which is merely declaratory and in affirmation thereof, to adjudge and punish for contempt. . . . Such inherent power extends not only to contempt committed in the presence of the court, but also to constructive contempt arising from refusal of defendant to comply with an order of the court. Such power, being inherent and a part of the judicial power of constitutional courts, cannot be limited or taken away by act of the legislature nor is it dependent on legislative provision for its validity or procedures to effectuate it.[10]

By statute, our legislature has also provided the circuit courts with the power to hold parties in contempt for "disobeying any lawful order, decree, or process of the court."[11] If such "misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant."[12] In addition, a trial court may require a party to pay the opposing

Q. Okay, is all the information about your gross income in those statements?

A. Every bit of information that you requested and that is relevant to this case for 2013 is reflected in my bank statements and my tax returns.

---

[7] Nor did Haiser believe that these statements would have been of any relevance. Haiser explained that "the bank statements are really the final proof of what the income is because that's what went in the bank and that's all I needed for my report."

[8] *In re Moroun*, 295 Mich App 312, 335; 814 NW2d 319 (2012).

[9] *Id*. at 336.

[10] *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 708-709; 624 NW2d 443 (2000), quoting *In re Huff*, 352 Mich 402, 415-416; 91 NW2d 613 (1958).

[11] MCL 600.1701(g).

[12] MCL 600.1721.

party's reasonable expenses, including attorney fees, caused by that party's failure to comply with discovery.[13]

Thaxton largely contends that, contrary to the trial court's determination, she did comply with court orders and the discovery process. Thaxton is incorrect. Thaxton disobeyed the trial court's orders related to the disclosure of her financial information and failed to appear for at least two hearings ordered by the court. At the outset, Thaxton objected to producing her tax information for 2011, 2012, and 2013, arguing that it was irrelevant and that there was an existing order protecting the information. After explaining to Thaxton that both of her objections were meritless,[14] Thaxton agreed to provide her tax information if Blanchard did the same. The Court ordered the exchange of information within the following three days. But the day before she was to give her tax documents to Blanchard, Thaxton filed a motion for reconsideration. She argued that her tax information should remain private, despite having agreed to exchange her information two days earlier. Although the trial court's order still stood, Thaxton did not provide her tax information to Blanchard, who had himself complied with the trial court's order. This prompted Blanchard to file a motion to compel compliance with the order.

Thaxton did not appear for the hearing on the motion, at which the trial court formally denied the motion for reconsideration.[15] At a hearing held about a week later, Thaxton appeared with what she claimed were all of her tax documents. She provided these to Blanchard's counsel at the hearing, but only after obtaining a court order that the documents not be disseminated. However, at the following hearing, Blanchard's counsel explained that Thaxton failed to include 1099s as the trial court had ordered. At this hearing, Thaxton provided her 1099 forms for 2013,

---

[13] See MCR 2.313(B)(2). "For purposes of this subrule an evasive or incomplete answer is to be treated as a failure to answer." MCR 2.313(A)(4).

[14] As the trial court explained, the protective order Thaxton referenced did not survive the divorce judgment, which entered prior to the proceedings at issue in this case. As for relevancy, Thaxton contended that because the issue was her 2013 income, her 2012 and 2011 tax information was irrelevant. As the trial court explained to Thaxton on multiple occasions, Blanchard's primary theory was that Thaxton had voluntarily reduced her income in 2013. Thus, the prior years' returns and financial information were relevant to establish whether any income should be imputed to Thaxton. See, e.g., 2013 MCSF 2.01(G)(2)(k) (as one of many factors to be considered when determining "the amount of potential income that [a] parent could earn," the court should ask "[w]hether there has been a significant reduction in income *compared to the period that preceded the filing of the . . . motion for modification*.").

[15] Thaxton had apparently sent a motion seeking to adjourn the hearing or to permit her to appear by telephone to Blanchard, but the motion was not received by the trial court. Thaxton later maintained that this motion was shown on the trial court's register of actions. It is not. Thaxton's response to the motion to compel is shown in the register of actions, but this motion contained no request for an adjournment or to appear by telephone. Regardless, the trial court attempted to contact Thaxton by telephone for approximately 30 minutes, but was unable to reach her.

-4-

but not for 2012 or 2011. It does not appear that Thaxton ever provided these missing documents to Blanchard, in violation of the trial court's order.

Thaxton was also evasive with respect to Blanchard's discovery requests for information related to her income. After Thaxton provided unresponsive answers to Blanchard's discovery requests, Thaxton was ordered to supplement her responses. She did supplement her responses, but provided no additional information.[16] This led to the trial court ordering her to provide either three years of bank statements or a signed release that would allow Blanchard to obtain the statements himself. The idea of a release came to pass after Thaxton objected to producing the bank statements herself on the basis that doing so would be too onerous a task. Despite her objection, Thaxton was able to provide the statements at the next hearing. But she also apparently had enough time to go through the statements and black out the portions she did not want to disclose, leading to the court ordering her to produce unadulterated bank statements.

At this same hearing, Blanchard provided two years of bank statements, and signed a release to allow Thaxton to obtain the missing year. Although it was abundantly clear that the issue of financial information was limited to a three-year period, and despite Blanchard having provided statements for two of these three years, Thaxton attempted to subpoena Blanchard's bank records for a six-year period, from 2008 through 2014.[17] At a subsequent hearing that Thaxton failed to attend in person, the subpoena was quashed, and Thaxton held in contempt for her blatant violation of the trial court's orders.

The result of Thaxton's unwillingness to divulge financial information was that Blanchard was forced to retain an expert to examine the tax information and bank statements that were eventually made available to him. This led to the realization that Thaxton had not reported all of her income on her tax returns, which were the documents utilized by the FOC to determine child support each year. Thaxton's evasiveness and false reporting of income was also the ultimate cause of Blanchard's attorney fees spent litigating this matter. The trial court appropriately required Thaxton to pay a portion of Blanchard's attorney fees and expert witness fees caused by her various refusals to comply with the trial court's orders.

---

[16] Specifically, when asked for her "gross monthly income . . . and all deductions made therefrom" for a period of 24 months, Thaxton responded that she did not have a monthly income. When later ordered to supplement her responses, she explained that she had "no regular monthly income. I do not draw a salary. I do not receive a paycheck. As funds are needed to pay recurring personal expenses and are available after payment of necessary business expenses [sic]." However, at the evidentiary hearing, Thaxton admitted that she understood that gross monthly income would include all income to her business in a one-month period. She then explained that she did not track her gross monthly income.

[17] Thaxton later claimed that she did so in an effort to obtain information relevant to a possible future motion regarding medical expenses. The trial court explained that this motive was improper, as Thaxton was attempting to use the court's power of subpoena to go on a fishing expedition on an issue unrelated to the proceedings for which the trial court had stated it would allow a subpoena.

Thaxton complains that the trial court sanctioned her for proceeding without an attorney. There is simply no basis for reaching such a conclusion. Clearly, the trial court sanctioned Thaxton for her repeated violations of its orders and her general refusal to comply with discovery, not her failure to obtain counsel.

Thaxton contends that Blanchard also violated court orders related to discovery but was not sanctioned, and argues that she was treated differently by the trial court for the same conduct, which she believes was biased against her. This is not the case. Thaxton complains that Blanchard did not comply with the trial court's order regarding bank statements. But he did comply with the court's ruling, providing two years of bank statements and a release for the third. Thaxton does correctly note that Blanchard did not timely respond to her discovery requests. But Thaxton omits to mention why this was so. Given Thaxton's history, there was a concern that Blanchard would be at a strategic disadvantage if he responded to discovery requests without an equal exchange from Thaxton. Thus, the trial court ordered the exchange of discovery requests in its presence, and Blanchard complied with this order. Nor did Thaxton file a motion to compel responses to her discovery requests. On the whole, any violation by Blanchard in not initially responding to the requests paled in comparison to Thaxton's conduct. The trial court's comparative treatment of Thaxton and Blanchard does not demonstrate any bias.

Again implying that the trial court treated her unfairly, Thaxton contends that the "final straw for the [trial] court was apparently a false, and evidently malicious, report delivered to him that I had filed a complaint against him." Again, Thaxton provides an incomplete recitation of the record. At the final pretrial conference, the trial court informed Thaxton that the clerk's office had stated that Thaxton filed a complaint against the presiding judge, and asked if this were true. The presiding judge made this inquiry because it would bear on whether he could continue to hear the matter. But contrary to Thaxton's argument on appeal, after Thaxton explained that she had not filed any such complaint, the presiding judge explained that he would put the matter out of mind and assume that the clerk's office had miscommunicated what occurred. There is absolutely no reason to believe that this apparently erroneous report had any effect on the proceedings.

On the whole, Thaxton offers no supportable arguments that would call the trial court's decision into question. Accordingly, we affirm the trial court's order requiring Thaxton to pay attorney fees and expert witness fees to Blanchard.

### III. CONTEMPT REGARDING ORTHODONTIC TREATMENT

In the final issue raised in this appeal, Thaxton contends that the trial court abused its discretion when it found her in contempt for making a unilateral decision regarding orthodontic treatment for the parties' oldest child, DB. We disagree.

DB began seeing Dr. Carl Wheeler in 2011. In 2014, Thaxton and Blanchard had many conversations via email regarding Wheeler's recommendation that DB receive braces. In multiple emails, Blanchard asked for a cost estimate and objected to the treatment until he received the estimate. Blanchard also found another orthodontist who, unlike Wheeler, would have been an in-network provider under Blanchard's insurance policy, which covered DB's orthodontic care. Blanchard asked Thaxton for her availability to meet with this orthodontist.

Thaxton, however, ignored the email, and instead, chose to have Wheeler install DB's braces. Blanchard then filed a motion asking the trial court to hold Thaxton in contempt for making a unilateral decision regarding DB's medical care despite the fact that in the divorce judgment, the parties were given joint legal custody. After hearing evidence on the issue, the trial court agreed that Thaxton's decision was in violation of the divorce judgment, and ordered Thaxton to pay the entire out-of-pocket cost of Wheeler's treatment.

Thaxton disputes the trial court's factual finding that she did not have Blanchard's consent to go forward with Wheeler's treatment, claiming that this "was clearly not true." In her brief on appeal, Thaxton makes a number of factual assertions that, were they true, would tend to undermine the trial court's conclusion. However, all of Thaxton's factual representations are false. Thaxton states that Blanchard testified that he did, in fact, see an estimate of the cost of Wheeler's treatment. But when presented with a copy of a cost estimate at the hearing, Blanchard testified that he had never before seen the document. Thaxton also contends that "Blanchard admitted that the estimate of costs was sent to him at both his work e-mail and his personal e-mail . . . ." At the portion of the record cited by Thaxton, Blanchard was asked if he remembered receiving emails in 2011 and 2012. The cost estimate Thaxton contends was emailed to Blanchard is dated October 22, 2013, and thus, could not have been provided in the emails sent to Blanchard. Thaxton claims that Blanchard acknowledged that Thaxton had discussed finances and insurance coverage with him. But at the part of the record she cites, no such discussion is mentioned. Rather, Blanchard testified that he received an explanation of benefits after the braces were installed.

Overall, Thaxton's argument is entirely meritless. Rather, the record shows that Blanchard did not consent to Wheeler's treatment, and that his lack of consent was clearly and unequivocally communicated to Thaxton. Despite having joint legal custody over DB, Thaxton ignored Blanchard's wishes and made a significant medical decision entirely on her own. Under the circumstances, the trial court chose a reasonable sanction: Thaxton was ordered to pay the entire out-of-pocket cost of the medical treatment she chose. Thaxton fails to demonstrate that this outcome is an abuse of discretion.

## IV. FURTHER SANCTIONS

After reading Thaxton's filings in this Court, we conclude that sanctions are appropriate pursuant to MCR 7.216(C)(1)(b). Under this rule:

> (1) The Court of Appeals may, on its own initiative or on the motion of any party filed under MCR 7.211(C)(8), assess actual and punitive damages or take other disciplinary action when it determines that an appeal or any of the proceedings in an appeal was vexatious because

* * *

(b) a pleading, motion, argument, brief, document, or record filed in the case or any testimony presented in the case was grossly lacking in the requirements of propriety, violated court rules, or grossly disregarded the requirements of a fair presentation of the issues to the court.[18]

As is explained throughout this opinion, Thaxton has consistently misrepresented the facts of this matter. She makes factual assertions that are directly contradicted by the record. She also provides incomplete statements of fact that seem to be made in an effort to mislead this Court into believing that she is the victim of unfair treatment by the trial court. In reality, despite her contumacious behavior, the trial court was rather forgiving, providing her multiple opportunities to comply with its directives and acquiescing to her demands for protective orders that seem entirely unnecessary. We conclude that Thaxton's appellate brief is "grossly lacking in the requirements of propriety" and "grossly disregarded the requirements of a fair presentation of the issues to the court." As such, we award Blanchard damages not exceeding his "actual damages and expenses incurred" on appeal, "including reasonable attorney fees . . . ."[19]

## V. CONCLUSION

The trial court's order is affirmed. Having concluded that Blanchard is entitled to the actual damages and expenses incurred pursuing this appeal, pursuant to MCR 7.216(C)(2), we remand the matter for a determination of Blanchard's actual damages, including reasonable attorney fees. The trial court shall enter an order awarding damages to Blanchard in the amount it determines he incurred defending this appeal.

We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray

---

[18] MCR 7.216(C)(1)(b).

[19] MCR 7.216(C)(2).