AUSSIE v AUSSIE

Docket No. 103828. Submitted October 3, 1989, at Detroit. Decided March 5, 1990.

Elinore J. Aussie obtained a judgment of divorce from Mohammed A. Aussie in the Oakland Circuit Court in 1982. Custody of the parties' children (Andrew, Jacqueline and Jason) was granted to plaintiff. Defendant was ordered to make weekly payments of $65 in support for each child and $150 in alimony for plaintiff for a period of five years. The Court of Appeals affirmed the divorce judgment in an unpublished memorandum opinion issued September 12, 1983 (Docket No. 67504). By oral agreement, defendant promised to pay one half of the cost of Andrew's private high school education. In 1985 Andrew turned eighteen and defendant's payments for his support terminated. In that same year, support payments for the other children were increased to $75 for each child and the court incorporated into the judgment a written agreement which was executed by the parties with regard to Andrew's college expenses. Under the terms of the agreement, defendant promised to pay $6,000 a year towards Andrew's college education and plaintiff agreed not to seek an increase in child support payments. In 1986 plaintiff petitioned the trial court for an increase in child support payments, an extension of the alimony period, and reimbursement for payments she made in connection with Andrew's education expenses. The court, Norman L. Lippitt, J., increased weekly child support to $110 for each child until the child's eighteenth birthday or graduation from high school, whichever is later. The court extended the alimony period to the date of Jason's eighteenth birthday, August 14, 1994. The court, however, refused plaintiff's request for enforcement of the oral and written agreements with respect to

REFERENCES

Am Jur 2d, Divorce and Separation §§ 702, 711, 715, 745, 1022, 1046, 1049, 1078.

Responsibility of noncustodial divorced parent to pay for, or contribute to, costs of child's college education. 99 ALR3d 322.

Change in financial condition or needs of parents or children as ground for modification of decree for child support payments. 89 ALR2d 7.

Andrew's education expenses. Defendant appealed, claiming that the trial court abused its discretion with respect to the modification of child support and alimony. Plaintiff cross appealed, claiming that the trial court erred in not enforcing the written agreement relating to Andrew's college education.

The Court of Appeals *held:*

1. The trial court did not abuse its discretion in extending the alimony period. Plaintiff sufficiently established a change in circumstances justifying the extension.

2. The trial court did not abuse its discretion in ordering an increase in child support. Plaintiff sufficiently established that a change in circumstances warranted an increase in child support, especially in light of Jason's organic brain damage which was not known by the parties at the time of the divorce.

3. The written agreement regarding Andrew's college expenses is valid and its enforcement is not precluded by *Smith v Smith,* 433 Mich 606 (1989), wherein the Supreme Court held that child support may not be ordered beyond the age of majority. On remand, the trial court is to conduct a hearing at which it shall consider the entry of a judgment for plaintiff for that portion of the contract to pay $6,000 a year towards Andrew's college expenses which defendant refused to perform.

4. The costs of tutoring Jason are associated with and result from his medical condition. Such expense is reasonable and necessary for the child's well-being. On remand, the trial court shall modify defendant's child support obligation to include a portion of the tutoring expenses as the trial court deems reasonable.

Affirmed in part, reversed in part, and remanded.

REILLY, J., dissented from the majority's decision to order a remand on the question of the parties' agreement with respect to Andrew's college expenses. She would hold that the parties have stipulated to a remedy in the event of defendant's failure to abide by the agreement, i.e., plaintiff is to seek an increase in child support. Judge REILLY concurred with the majority in all other respects.

1. DIVORCE — ALIMONY — MODIFICATION OF ALIMONY.

An award of alimony in a judgment of divorce may be modified only where a change in circumstances arising since the granting of the judgment justifies the modification (MCL 552.28; MSA 25.106).

2. DIVORCE — ALIMONY — MODIFICATION OF ALIMONY — BURDEN OF PROOF.

The party seeking the modification of an award of alimony in a

judgment of divorce has the burden of showing changed circumstances which justify modification of the judgment.

3. Divorce — Alimony — Modification of Alimony — Appeal.

The Court of Appeals reviews a modification of alimony de novo, but gives grave consideration to the findings made by the trial court and will not afford appellate relief unless convinced it would have reached a different conclusion had it sat in the trial court's place.

4. Divorce — Alimony — Wife's Income.

A divorced woman's own efforts at earning income do not release her former husband from paying alimony where obligated to do so by the judgment of divorce.

5. Divorce — Child Support — Modification of Support.

A trial court has the statutory power to modify orders for child support upon a showing by the petitioning party of a change in circumstances sufficient to justify modification (MCL 552.17; MSA 25.97).

6. Divorce — Child Support — Modification of Support — Appeal.

The modification of a child support order is in the trial court's discretion and will not be disturbed on appeal absent a clear abuse of discretion.

7. Divorce — Child Support — College Expenses — Age of Majority.

An agreement incorporated in a judgment of divorce whereby the husband, in exchange for the wife's promise not to seek an increase in the amount of child support to be paid by the husband during the child's minority, promises to pay expenses related to the child's college education is valid and may serve to bind the husband to continue paying for such expenses beyond the child's eighteenth birthday.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Wendy R. Lampert*), for plaintiff.

*Hill, Lewis, Adams, Goodrich & Tait* (by *Hanley M. Gurwin*), and *Vincent J. Maloney,* of Counsel, for defendant.

Before: SHEPHERD, P.J., and REILLY and T. GIL-
LESPIE,* JJ.

T. GILLESPIE, J. This is another episode in the
continuing saga of the post-divorce trials and tri-
bulations of the Aussie family that began October
1, 1982, when a judgment of divorce ended a
seventeen-year marriage between plaintiff and de-
fendant. That original judgment was appealed to
this Court, and a panel of this Court affirmed the
judgment of the trial court in an unpublished
memorandum opinion decided September 12, 1983
(Docket No. 67504). Since the entry of the divorce
judgment, the parties have made repeated visits to
the circuit court both to enforce the judgment and
to modify it. Additionally, the parties have entered
into side agreements, which have not been ful-
filled. In short, a great deal of judicial time has
been expended in attempts to settle the problems
of this family. In the instant case, defendant ap-
peals and plaintiff cross appeals from a post-di-
vorce order for modification of child support and
alimony entered in Oakland Circuit Court on Sep-
tember 18, 1987. We affirm in part, reverse in
part, and remand.

Defendant is a physician practicing in the fields
of obstetrics and gynecology. He is a sole practi-
tioner and is incorporated as a professional corpo-
ration. His office is located in Southfield. Defen-
dant sets his own salary and claims an adjusted
gross income of $67,400 in 1984, $76,277 in 1985,
and $59,000 in 1986. His professional corporation
grossed $201,549.78 in 1983, $208,944.49 in 1984,
and $207,764.44 in 1985.

Plaintiff, at the time of divorce, was employed at
home as a housewife. Following the divorce, plain-

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment.

tiff obtained employment in a law firm as a receptionist and secretary. Her adjusted gross income was $25,043 in 1984, $29,942 in 1985, and $34,731 in 1986. These figures include alimony which amounts to $7,800 annually.

Under the terms of the October 1, 1982, judgment of divorce, plaintiff received legal and physical custody of the parties' three then-minor children: Andrew, born August 1, 1967; Jacqueline, born March 4, 1971; and Jason, born August 14, 1976. Plaintiff was awarded $65 per week per child in support[1] and $150 per week in alimony. The alimony was to be paid only for a period of five years. In addition to the child support and alimony, plaintiff received most of the furnishings in the marital home, with the exception of some rugs given to defendant by his Iranian relatives as gifts which were determined not to be marital property. She was also granted occupancy of the marital home for a period of five years. Because plaintiff was unable to afford the upkeep on the marital home, it was sold and the profits were divided between the parties. She and the children consequently moved to an older, smaller home in need of a great deal of repair and maintenance.

In addition to the rugs, defendant received his professional corporation, his interest in his pension and profit-sharing plans and the stock the parties owned.

The parties' oldest child, Andrew, attended a private high school, Cranbrook, at the time of the divorce. He finished his secondary education there. In 1985, Andrew turned eighteen and his support terminated. He attends the University of Michigan. He is not self-supporting.

---

[1] The support was increased to $75 per minor child as of August 12, 1985. At that time, defendant's support obligation as regards to Andrew had terminated, Andrew having reached the age of eighteen.

Jacqueline turned eighteen on March 4, 1989. Accordingly, her support ended on that date. She is a scholarly, active young woman. She plans to attend college in Arizona. Since the divorce Jacqueline has increased expenses due to her age-related activities.

Jason, the youngest child, was only six when the parties divorced. Although at the time of the divorce the parties recognized that Jason suffered some speech impairment, it was not until after the divorce that they learned that Jason has organic brain damage. As a result of the brain damage, Jason suffers from severe depression, suicidal tendencies, and learning and speech disabilities. He requires special tutoring. He also requires psychotherapy twice a week at $75 per session. Jason participates in sports, in artistic endeavors, and in hobbies such as collecting toy cars and building model airplanes. These activities are encouraged as part of his therapy. It is unlikely that he will ever be self-sufficient. He cannot be left alone because he is disoriented as to time. Jason's deficiencies have been an additional strain on plaintiff both as to time and financial resources.

The record further reveals that the emotional and financial support of the children has been provided, in large part, by plaintiff. Defendant participates financially only to the extent required by court order. Additionally, defendant has minimized or ignored the problems of Jason and has shown little interest in the children, in general. Defendant's indifference is evidenced in the following occurrences: (1) Defendant agreed to pay one-half of Andrew's expenses associated with his enrollment in Cranbrook. He honored this agreement for two years and then refused to pay his share of the expenses incurred in Andrew's final semester. Consequently, plaintiff was forced to

borrow money to cover Andrew's tuition so that he could graduate. She also paid Andrew's school-related expenses of approximately $4,500. (2) Defendant, in a written agreement entered into in 1985, agreed to pay $6,000 a year toward Andrew's college expenses in return for which plaintiff waived her right to petition the circuit court "for an increase in child support, above the current level of $75 per child, per week." He paid $4,400 in 1986; $4,165 in 1987 and nothing thereafter. (3) Defendant, in December, 1986, cut off payment to the psychiatrist to whom Jason had been referred even though those fees were covered by insurance provided through his professional corporation. He also refused to communicate with the psychiatrist.

In the autumn of 1986, plaintiff filed a petition seeking an increase in defendant's child support obligation, an extension of defendant's alimony obligation and reimbursement for expenses incurred and paid as a result of Andrew's high school and college education. A three-day hearing on plaintiff's petition took place in April and May, 1987. On September 18, 1987, the circuit court entered an order increasing defendant's child support obligation to $110 per week per child until each child reached the age of eighteen or graduated from high school, whichever was later. This increase was made retroactive to February 13, 1987. The circuit court also extended defendant's alimony obligation of $150 per week which was due to expire on October 1, 1987, to the date of Jason's eighteenth birthday, August 14, 1994. The circuit court, however, denied plaintiff's request for enforcement of the oral and written post-divorce agreements between plaintiff and defendant regarding payments for Andrew's education. This appeal and cross appeal followed.

Defendant first argues that the circuit court

abused its discretion in extending his alimony obligation. A circuit court has the authority to extend the period during which one former spouse is obligated to pay alimony to the other former spouse. This authority is found in MCL 552.28; MSA 25.106, which provides:

> *After a judgment for alimony* or other allowance, for either party and children, or any of them, and also after a judgment for the appointment of trustees, to receive and hold any property for the use of either party or children as before provided *the court may, from time to time, on the petition of either of the parties, revise and alter such judgment, respecting the amount of such alimony or allowance and the payment thereof,* and also respecting the appropriation and payment of the principal and income of the property so held in trust, *and may make any judgment respecting any of the matters which such court might have made in the original suit.* [Emphasis added.]

The circuit court did not abuse its discretion in extending defendant's alimony obligation.

Modification of alimony is authorized by MCL 552.28; MSA 25.106. Before modification may be undertaken, the party seeking modification must show a change in circumstances arising since the entry of the divorce judgment. *Crouse v Crouse,* 140 Mich App 234, 239; 363 NW2d 461 (1985). This Court reviews the modification of an alimony award de novo, but gives "grave consideration" to the findings made by the trial court. We will not afford appellate relief unless we are convinced that we would have reached a different conclusion if we had sat in the trial court's place. *Vance v Vance,* 159 Mich App 381, 387; 406 NW2d 497 (1987), lv den 429 Mich 870 (1987); *Rapaport v Rapaport,* 158

Mich App 741, 746; 405 NW2d 165 (1987), modified 429 Mich 876 (1987).

We find that plaintiff established sufficient changes in circumstances to warrant an extension of the alimony. Plaintiff's expenses have risen considerably. The loss of her home because she could not afford the upkeep and the high cost of repairs and maintenance of the replacement home is one such change in circumstances. Other changes not contemplated were the legal expenses she has incurred in attempts to enforce the judgment of the court and to get assistance from the husband in caring for his children and the failure of defendant to fulfil his promises of assistance. Also, the seriousness of Jason's brain damage, which requires special care and constant attendance by plaintiff, or someone she would hire, is an unforeseen circumstance which has left plaintiff without funds and the court with justification to extend the period of alimony.

On appeal, defendant argues that it was an abuse of discretion for the circuit court to extend his alimony obligation beyond the five years provided in the divorce judgment because his salary has remained relatively constant while plaintiff's income has increased. Defendant's argument is spurious. While plaintiff's income has increased, it remains significantly lower than defendant's income. Moreover, an ex-wife's own efforts at earning income do not release the ex-husband from his alimony obligations. *Hensinger v Hensinger,* 334 Mich 344, 346; 54 NW2d 610 (1952). We also note that defendant sets his own salary and that the amount of salary received by defendant from his professional corporation reflects his ability to pay the alimony increase.

Defendant next argues that the circuit court abused its discretion when it increased his child

support obligation of $75 per week per minor child to $110 per week per minor child. A circuit court has the statutory power to modify orders for child support upon a showing by the petitioning party of a change in circumstances sufficient to justify a modification. MCL 552.17; MSA 25.97; *Jacobs v Jacobs,* 118 Mich App 16, 20; 324 NW2d 519 (1982). We review a circuit court's decision to modify a child support obligation de novo. *Haefner v Bayman,* 165 Mich App 437, 444; 419 NW2d 29 (1988). The party challenging the modification on appeal bears the burden of showing a clear abuse of discretion which convinces this Court that it would have reached a different result. *Wilkins v Wilkins,* 149 Mich App 779, 792; 386 NW2d 677 (1986).

Defendant has not shown a clear abuse of discretion. Based on the increased cost associated with the rearing of his minor children, especially the increased cost resulting from Jason's special needs, plaintiff established a change in circumstances sufficient to warrant an upward modification of defendant's child support obligation.

On appeal, defendant again argues that the consistency of his income level as compared with the rise in plaintiff's income level should preclude the circuit court from modifying his support obligation. Again we find this argument spurious. The parties' income levels are relevant only as to a determination of each party's ability to pay. *Hoke v Hoke,* 162 Mich App 201, 206; 412 NW2d 694 (1987). Defendant's income level demonstrates his ability to pay support as modified.

It is interesting to note that at the time of the entry of the divorce judgment defendant paid $195 a week in child support. Under the September 18, 1987, order for modification, defendant was to pay a total of $220 per week for two children, a modest

increase of $25 a week over the original support award. As of March, 1989, defendant was obligated to pay only $110 per week.

In her cross appeal, plaintiff first asks us to reverse the circuit court's decision not to enforce a stipulation in writing entered into and placed in the file in which the defendant agreed to pay $6,000 a year toward Andrew's college expenses. Such agreements have been enforced by Michigan courts when they are made voluntarily and incorporated in the divorce judgment. *Ovaitt v Ovaitt,* 43 Mich App 628; 204 NW2d 753 (1972); *Gibson v Gibson,* 110 Mich App 666; 313 NW2d 179 (1981).

Recently, our Supreme Court in *Smith v Smith,* 433 Mich 606; 447 NW2d 715 (1989), held that a circuit court is without jurisdiction to provide for child support beyond the age of majority. However, we do not read *Smith* to preclude plaintiff from enforcing a clear contract of the parties which may be of record or in the judgment in the case.

We recognize a problem in this case in that the stipulation attempts to provide its own remedy in case of violation of the contract, namely that if defendant fails to meet the obligation which he undertook plaintiff has the right to apply for court intervention in the form of increased support. While the option of increasing child support for Andrew is no longer valid, defendant did agree to pay the college expenses in consideration of plaintiff's agreement not to seek additional support at the time. Plaintiff kept her part of the bargain. As the *Ovaitt* panel concluded, failure to enforce such contracts would be "an invitation to chaos [because it] would permit parties to divorce actions to play fast and loose with the court and with the other parties . . . by entering into agreements which they had no intention of performing." *Oviatt, supra* at 638.

We therefore remand to the trial court for a hearing. The court shall consider the entry of judgment for plaintiff for that portion of the contract to pay $6,000 a year toward Andrew's college expenses which defendant refused to perform.

As to plaintiff's last request, we are convinced that the costs of Jason's tutors are associated with and result from his medical condition and that they are a part of his therapy. We find such expenses reasonable and necessary for the child's well-being. Accordingly, we remand the instant action to the circuit court to permit it to enter an order modifying the child support provision to include a provision requiring defendant to pay that portion of Jason's tutoring expenses as the court shall find reasonable. To this extent, we reverse the circuit court.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

REILLY, J. *(concurring in part and dissenting in part)*. I respectfully dissent from the majority's decision to remand to the trial court to consider the entry of a judgment for plaintiff based on defendant's stipulation to pay $6,000 per year toward Andrew's college expenses. That stipulation also contained plaintiff's agreement not to seek an increase in child support above the then current level of $75 per week. The agreement further provided:

> Should Dr. Aussie cease paying for Andrew's college expenses, Elinore Aussie may, at that point, petition the court for an increase in child support.

That language clearly anticipates that Dr. Aussie might discontinue payments and provides that, if

payments cease, Elinore Aussie "at that point" has the option to seek an increase in child support for the remaining children.

According to the record, Dr. Aussie paid $4,400 in 1986 and $4,165 in 1987 pursuant to the stipulation. In spite of these payments, plaintiff sought an increase in child support for Jason and Jacqueline in autumn, 1986. I will not quibble over who broke the agreement first. However, I believe that the parties' own remedy for a breach is the appropriate one. Plaintiff is entitled to seek an increase in child support which, if granted, could be retroactive to the date payments for Andrew's expenses ceased. The trial court would then be recognizing the validity of the parties' agreement, and properly exercising its authority under MCL 552.28; MSA 25.106. At the same time the trial court would avoid imposing an obligation to support an adult child in a manner which is inconsistent with the parties' agreement, was not part of the judgment of divorce, and is contrary to the ruling of *Smith v Smith,* 433 Mich 606; 447 NW2d 715 (1989).