*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EMMANUEL KENGNI NCHEUGUIM,

      Plaintiff-Appellant,

v

MIREILLE ALICE MAGUIKUIE TEGADJOUE,

      Defendant-Appellee.

UNPUBLISHED
November 14, 2019

No. 344412
Saginaw Circuit Court
LC No. 14-022946-DM

Before: O'BRIEN, P.J., and GADOLA and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals by leave granted[1] the trial court's opinion and order denying plaintiff's motion to order defendant to pay child support. Because the support order deviated from the Michigan Child Support Formula (MCSF) and the trial court never articulated a basis for that deviation in accordance with MCL 552.605, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

The parties were married and had two children together. On May 2, 2014, plaintiff filed a complaint for separate maintenance. Over a year later, on April 21, 2015, the parties signed and the trial court entered a judgment of separate maintenance. That eventually led to a judgment of divorce being entered on March 4, 2016. At the time of the divorce, both parties lived in the Saginaw area. The divorce granted the parties joint custody, and included a parenting schedule stating plaintiff would have the children Monday through Thursday overnight, and defendant would have them Friday through Sunday overnight.

---

[1] *Emmanuel Kengni Ncheuguim v Mireille Alice Maguikuie Tegadjoue*, unpublished order of the Court of Appeals, entered November 15, 2018 (Docket No. 344412).

Two months after the judgment of divorce was entered, defendant filed an emergency petition regarding parenting time. The petition requested that plaintiff's parenting time be suspended "because of child abuse and neglect." This led to the issue of custody and parenting time being referred to a "custody specialist," who submitted findings and recommendations to the court. As part of her findings, the specialist stated that defendant was employed in Grand Rapids, but appeared to still live in Saginaw. The specialist noted, however, that defendant expressed a desire "to leave the Saginaw area" because of her job and "wanting to get further away from" plaintiff. The specialist recommended continuing the current the parenting schedule.

Rather than having the trial court enter the specialist's recommendation, the parties came to an alternative agreement, which they placed into a stipulated order. The order provided that plaintiff would have custody of the children during the school year, during which defendant was allowed "one mid-week parenting time period (no overnights) and up to four days per month of weekend parenting time as long as she informs the Plaintiff at least 48 hours prior to visit." Defendant would then have the children during the summer, as well as during winter and spring breaks. The order also provided:

> There shall be no child support ordered to be paid. This is likely a deviation from whatever the support guidelines will be, however, the parties choose to do this to resolve this matter.

> Defendant . . . will be responsible to transport the children for her parenting time since she is the one choosing to leave the Saginaw area.

The trial court entered the stipulated order on September 28, 2016.

About nine months after the trial court entered the stipulated order, on June 21, 2017, plaintiff filed a motion requesting child support and to enforce the parenting-time schedule. The motion alleged that shortly after the stipulated order was entered, defendant moved to Minnesota, and that she had since "declined" to exercise her parenting time for the winter and spring breaks, which caused plaintiff to incur unexpected expenses. The motion also alleged, "When the agreement was signed that led to the September 28, 2016 order, it was anticipated that [defendant] would be helping the children financially, however, she has provided almost nothing for the children." The motion requested that defendant be financially responsible for actual expenses incurred to plaintiff if defendant chooses to not exercise her parenting times, and that the issue of child support be referred to a referee "for a report and recommendation."

The trial court held a hearing on the motion on August 28, 2017. At the hearing, plaintiff reiterated the arguments in his motion, but added that he was requesting defendant cover actual expenses for missed parenting time only if defendant failed to provide adequate notice (which, according to plaintiff, meant four-weeks' notice). With respect to his child support request, plaintiff added that he had agreed to no child support with the understanding that "defendant was going to help out with various items, extracurriculars," but she had not done so. Defendant represented herself, and said that it would not be a problem to give one month's notice if she was unable to exercise her parenting time. The trial court then told the parties that the issue of support would be "referred," and the hearing concluded.

On September 21, 2017, defendant, now represented by counsel, filed a motion to enforce the parties' stipulated order and set aside the referral. Defendant argued that the parties had agreed that defendant would not pay child support in exchange "for settling all other matters then pending between the parties." Defendant explained that there was no justification for revisiting the child support issue because there had been no change in circumstances. The motion requested the court "to enforce the terms of the contract entered into by the parties" and "set aside the order referring the issue of child support."

In answer, plaintiff acknowledged that the parties could agree to an amount of child support less than that calculated by the MCSF. But plaintiff contended that the amount agreed to in the stipulated order did not satisfy the requirements in MCL 552.605(2) for deviating from the MCSF, and, therefore, the order could not be enforced. Alternatively, plaintiff argued that there had been a change in circumstances necessitating revisiting child support because, when the stipulated order was signed, plaintiff anticipated that defendant would care for, and be financially responsible for, the children during her parenting time, which had not happened. Lastly, plaintiff pointed out that the stipulated order was not necessarily binding on the parties because the parties could not bargain away the children's right to support.

On October 9, 2017, the trial court held a hearing on defendant's motion opposing the referral. The parties argued in line with their briefs. After listening to the arguments, the trial court ordered that the case be referred, but noted that it was not "necessarily going to order child support." It explained that it "just want[ed] to know where the guidelines would place it if [the court] were to order it." The trial court also explained that it planned to have the parties before it again "once we have a report."

Following the parties meeting with a referee, the referee recommended that defendant pay plaintiff $648 per month in child support. Defendant objected to the referee's findings, arguing that the parties should be held to their agreement outlined in the stipulated order, that there had been no change in circumstances to justify a deviation from that order, that the referee's calculation of child support was too high, and that, if nothing else, a deviation from the referee's recommendation was warranted.

On December 18, 2017, the trial court held a hearing on defendant's objection. At the hearing, plaintiff's counsel argued that child support was necessary because there were numerous unexpected expenses that came up for the children, including their participation in extracurricular activities and an increased cost for plaintiff's health insurance. In response, defendant's counsel emphasized that numerous things were given up in exchange for the no-child-support agreement, including a resolution of the then-impending custody and change-of-domicile disputes. After hearing the parties' arguments, the trial court took the matter under advisement.

On January 10, 2018, the trial court issued a written opinion and order. The trial court recognized that "[t]he parties' agreed to settle the case by setting child support at zero and giving [plaintiff] full custody of the minor children." The trial court then acknowledged MCL 552.605 (which explains when a deviation from the MCSF is allowable) and caselaw interpreting it. The trial court then provided, in relevant part:

Stipulations by the parties as to child support are not binding on the court, which has the power to provide proper maintenance for the children, even if one parent has released the other from his or her support obligation. Thus, even if [Plaintiff] knowingly and willingly entered into an agreement bargaining child support for physical custody, the overriding concern of matters of child support is the welfare of the children, and an agreement between the parties regarding support does not suspend the authority of the court to enter an order for adequate support.

This Court finds no reason to change child support. As part of the settlement agreement by both parties, they each agreed to set child support at zero so the plaintiff father could have custody of the minor children and so the defendant mother could afford the travel expenses to get the children to Michigan and back to where [defendant] resides. Therefore, because this was part of the settlement agreement, and if this Court was inclined to change child support, this Court would also revisit all issues regarding that settlement[,] This Court, in its discretion, will not grant Plaintiff's motion on those grounds. Therefore, Plaintiff's motion is **DENIED.** [Footnotes omitted.]

Plaintiff now appeals that opinion and order by leave granted.

## II. STANDARD OF REVIEW

As detailed in *Holmes v Holmes*, 281 Mich App 575, 586-587; 760 NW2d 300, 307 (2008):

We review for an abuse of discretion child support orders and the modification of such orders. *Peterson v Peterson*, 272 Mich App 511, 515; 727 NW2d 393 (2006). However, "[w]hether a trial court properly operated within the statutory framework relative to child support calculations and any deviation from the child support formula are reviewed de novo as questions of law." *Id*. at 516. An appellate court also reviews de novo a trial court's finding "derived from an erroneous application of law to facts." *Beason v Beason*, 435 Mich 791, 804-805; 460 NW2d 207 (1990). To the extent that the circuit court's ruling involves statutory construction, this Court also applies review de novo. *Fisher v Fisher*, 276 Mich App 424, 427; 741 NW2d 68 (2007).

The existence of a contract involves a question of law, which we review de novo. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). Contract interpretation also presents a question of law, again subject to review de novo. *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 825 (2005). A divorce judgment "entered upon the settlement of the parties . . . represents a contract, which, if unambiguous, is to be interpreted as a question of law." *In re Lobaina Estate,* 267 Mich App 415, 417-418; 705 NW2d 34 (2005).

III. ANALYSIS

The parties entered a stipulated order providing that "[t]here shall be no child support ordered to be paid." The parties then operated under that order for several months. That order is not on appeal and cannot be reviewed by this Court. See *Kosch v Kosch*, 233 Mich App 346, 353; 592 NW2d 434 (1999) ("Defendant's failure to file an appeal from the original judgment of divorce, pursuant to MCR 7.205(A) or (F), precludes a collateral attack on the merits of that decision. By failing to appeal the original judgment of divorce, defendant has effectively stipulated her consent to its provisions, including the original determination of child support. Defendant's claim that the original agreement was defective on its face is not properly subject to review by this Court at this time."). Rather, the order on appeal is the trial court's order denying plaintiff's request to modify the parties' stipulated order for child support.

While it is true that a court can generally only modify orders for child support upon a showing of a change in circumstances justifying the modification, see MCL 552.17; *Aussie v Aussie*, 182 Mich App 454, 463; 452 NW2d 859 (1990), "[w]hen a court order does not provide for child support, such maintenance may later be provided by the court and does not depend upon a change of circumstances," *Johns v Johns*, 178 Mich App 101, 106; 443 NW2d 446 (1989). Thus, the parties' arguments over whether there was a change in circumstances justifying modification are not relevant to deciding the case.[2]

The question, then, is whether the trial court correctly decided that it should not modify its previous child support order and that the parties should be held to their agreement that defendant not pay child support. MCL 552.605(3) states that a court is not prohibited "from entering a child support order that is agreed to by the parties and that deviates from the child support formula, *if* the requirements of subsection (2) are met." (Emphasis added.) MCL 552.605(2) states:

> (2) Except as otherwise provided in this section, the court shall order child support in an amount determined by application of the child support formula developed by the state friend of the court bureau as required in section 19 of the friend of the court act, MCL 552.519. The court may enter an order that deviates from the formula if the court determines from the facts of the case that application of the child support formula would be unjust or inappropriate and sets forth in writing or on the record all of the following:

---

[2] Even if a change in circumstances was necessary before the trial court could modify the support order, the trial court did not deny plaintiff's motion to modify child support because it found that there was no change in circumstances. Instead, the trial court simply addressed whether a different amount of child support was proper. Assuming that the trial court needed to find a change in circumstances before addressing a modification to child support, the court must have implicitly decided that there *was* a change in circumstances—otherwise, it could not have addressed a potential modification to child support in the first instance.

(a) The child support amount determined by application of the child support formula.

(b) How the child support order deviates from the child support formula.

(c) The value of property or other support awarded instead of the payment of child support, if applicable.

(d) The reasons why application of the child support formula would be unjust or inappropriate in the case.

The stipulated order acknowledges that the parties' agreement was "likely a deviation from whatever the support guidelines will be," but the trial court entered this order that deviates from the MCSF without considering the criteria in MCL 552.605(2)(a)-(d). That order, however, is not on appeal. But in upholding that order in the order that *is* on appeal, the trial court again failed to adequately justify its deviation from the MCSF.[3] Compare *Kosch*, 233 Mich App at 353 ("Defendant never appealed that original order and, while we acknowledge that the court did not comply with the formalities of the statute in deviating from the child support formula, in the order currently being appealed, the court, as noted above, meticulously set out its reasoning and addressed the concerns expressed by appellant about the earlier judgment.").

In *Burba v Burba*, 461 Mich 637, 644; 610 NW2d 873 (2000), our Supreme Court held that "the criteria [in MCL 552.605(2)(a)-(d)] for deviating from the formula are mandatory."[4] The *Burba* Court emphasized that "[t]he importance the Legislature attached to courts carefully articulating these factors when deviating from the formula cannot be underestimated, for the Legislature prescribed their use when courts deviate from the formula in no less than eight different sections of the Michigan Compiled Laws." *Id*. "To impress upon the courts the gravity of deviating from the formula, the Legislature has required them to meticulously set forth these factors when deviating." *Id*. at 645-646. "Thus, as required by MCL 552.605(2), when deviating from the formula, the trial court fulfills its statutory duty only when the court has articulated its rationale in accordance with subsection 2(a) through (d)." *Peterson*, 272 Mich App at 517.

As stated above, when the trial court entered the September 2016 stipulated order that deviated from the MCSF, it did not fulfill its statutory duty under MCL 552.605(2) by

---

[3] Nothing in MCL 552.605 states that the factors in subsection 2 for deviating from the MCSF should only be considered in an initial support order. Rather, based on the text, it seems that those factors should be considered any time a court "enter[s] an order that deviates from the formula . . . ." MCL 552.605(2).

[4] "The *Burba* Court analyzed MCL 552.17(2), which, at the time *Burba* was decided, included the same language as MCL 552.605(2). Subsection 2 of MCL 552.17 was deleted in 2001, and MCL 552.605 was amended that same year. 2001 PA 106 and 107. Therefore, *Burba* remains controlling authority." *Peterson*, 272 Mich App at 517 n 4.

articulating its rationale for deviating from the MCSF in accordance with subsection 2(a) through (d). When the trial court later refused to modify that order, it reasoned:

> As part of the settlement agreement by both parties, they each agreed to set child support at zero so the plaintiff father could have custody of the minor children and so the defendant mother could afford the travel expenses to get the children to Michigan and back to where [defendant] resides. Therefore, because this was part of the settlement agreement, and if this Court was inclined to change child support, this Court would also revisit all issues regarding that settlement[,] This Court, in its discretion, will not grant Plaintiff's motion on those grounds.

Though the record is clear that the MCSF calculated child support at $648 per month, the trial court never stated so in its opinion and order. See MCL 552.605(2)(a). Nor did the trial court acknowledge that its ordered amount of $0 per month in child support deviated from this formula, let alone that it deviated by $648 per month. See MCL 552.605(b). The court did, however, acknowledge that defendant paying for the children's travel expenses was value awarded instead of payment of child support, see MCL 552.605(c), but it appeared to do so in the context of explaining why the $0 per month child support was a bargained-for exchange.

With respect to the final criterion, the trial court failed to adequately explain why application of the MCSF "would be unjust or inappropriate in this case." MCL 552.605(d). It reasoned that child support should be zero "because [that amount] was part of the settlement agreement, and if this Court was inclined to change child support, this Court would also revisit all issues regarding that settlement." But "[i]t is a well-established principle in Michigan that parties cannot bargain away their children's right to support." *Laffin v Laffin*, 280 Mich App 513, 518; 760 NW2d 738, (2008). That is why MCL 552.605(2) was implemented as a safeguard for trial courts to "ensure that a child support order is just, even if the parties agree to a support order that deviates from the guidelines." *Id*. at 520. Thus, that the parties agreed to no child support does not necessarily make application of the MCSF unjust or inappropriate. Likewise revisiting the settlement issues does not make application of the MCSF unjust or inappropriate. The MCSF amount was never considered in the original settlement agreement, but it should have been. It therefore appears that, when now considering the MCSF amount of child support, those issues *should* be revisited.

In sum, the trial court only considered, at best, one of the four criteria in MCL 552.605(2) for deviating from the MCSF. As explained in *Burba*, 431 Mich at 644, "the criteria for deviating from the formula are mandatory." Consequently, the trial court erred as a matter of law when it deviated from the formula without establishing the mandatory, requisite grounds for doing so.

Defendant argues that, if this Court concludes that the trial court did not comply with the requirements of MCL 552.605(2), this Court should nonetheless affirm under a theory of "substantial compliance." Yet defendant ignores that "[i]t is a cardinal rule of statutory construction that a clear and unambiguous statute warrants no further interpretation and requires full compliance with its provisions, as written." *N Concrete Pipe, Inc v Sinacola Companies-Midwest, Inc*, 461 Mich 316, 320; 603 NW2d 257 (1999). In *N Concrete Pipe*, our Supreme Court delved into a "substantial compliance" theory because, in the act being analyzed (the

Construction Lien Act), "the Legislature provided an exception to that [full compliance] rule, in the form of the 'substantial compliance' provision." *Id*. at 320-321. There is no "substantial compliance" provision in MCL 552.605, so defendant's argument is unpersuasive.

Defendant also argues that based on contract principles, the parties' agreement must be enforced. While a contract must generally be enforced as written absent any ambiguity, *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016), "contracts founded on acts prohibited by a statute, or contracts in violation of public policy, are void," *Allard v Allard*, 318 Mich App 583; 899 NW2d 420 (2017). "In ascertaining the parameters of our public policy, we must look to policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law." *Rory v Continental Ins Co*, 473 Mich 457, 471; 703 NW2d 23 (2005). See also *Skutt v City of Grand Rapids*, 275 Mich 258, 265; 266 NW 344 (1936) ("The public policy of the government is to be found in its statutes[.]") (Quotation marks and citation omitted.)

While the parties' child support agreement that deviated from the MCSF was not, itself, necessarily against public policy, the court could not incorporate that agreement into an order unless it considered the criteria in MCL 552.605(2). See MCL 552.605(3). Absent the court's consideration of those criteria, incorporating the agreement into a child support order violated a Michigan statute. Our laws are clear that an agreement by the parties for child support that deviates from the MCSF is only enforceable by court order if the court considers the criteria in MCL 552.605(2). See MCL 552.605(3). Therefore, the court could not enforce the parties' agreement through a court order unless/until those criteria are considered. For this reason, defendant's argument based on contract principles is unpersuasive.

On appeal, both parties mention *Holmes*, which is the most recent published case that deals with an issue similar to the one now before the Court. We briefly discuss *Holmes* to explain why that decision is inapposite to the instant case.

In *Holmes*, this Court concluded that the parties should be held to their agreement that required plaintiff to pay defendant "an amount exceeding the guidelines[.]" *Holmes*, 281 Mich App at 593. In so doing, the *Holmes* Court recognized that in other cases—namely *Ovaitt v Ovaitt*, 43 Mich App 628; 204 NW2d 753 (1972), and *Aussie*, 182 Mich App 454—this Court had "enforced voluntary agreements to pay *additional* child support incorporated into a divorce judgment." *Holmes*, 281 Mich App at 590. The *Holmes* Court recognized, however, that in cases where the parties' agreement *limited* a parent's obligation to pay child support—namely *Johns*, 178 Mich App 101, and *Ballard v Ballard*, 40 Mich App 37; 198 NW2d 451 (1972)—the deviations were "strongly disfavored." *Holmes*, 281 Mich App at 590. In concluding that the parties should be held to their agreement, the *Holmes* Court emphasized that the case before it was similar to *Ovaitt* and *Aussie*, and dissimilar to *Johns* and *Ballard*. *Id*. at 592.

In contrast, because the parties' agreement here *limits* defendant's obligation to pay child support, it is similar to *Johns* and *Ballard*, and dissimilar to *Ovaitt* and *Aussie*. That is, the

parties' agreed-upon deviation is "strongly disfavored." *Holmes*, 281 Mich App at 590. For the deviation to be permitted, the trial court was required to apply the criteria in MCL 552.605(2).[5] As already explained, the trial court did not sufficiently apply the criteria in MCL 552.605(2) to justify the parties' agreed-upon deviation, and therefore erred as a matter of law by entering the order permitting the deviation. See MCL 552.605(3) ("Subsection (2) does not prohibit the court from entering a child support order that is agreed to by the parties and that deviates from the child support formula, if the requirements of subsection (2) are met.").

## IV. CONCLUSION

Accordingly, the order denying plaintiff's motion to order defendant to pay child support is vacated, and the case is remanded for the trial court to either justify the deviation from the MCSF using the mandatory criteria listed in MCL 552.605(2)(a)-(d), or to enter an order for child support as calculated by the MCSF, see MCL 552.605(2) ("Except as otherwise provided in this section, the court shall order child support in an amount determined by application of the child support formula developed by the state friend of the court bureau . . . ."). On remand, the trial court is also permitted to revisit the settlement issues, if it sees fit.

Vacated and remanded. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Michael F. Gadola
/s/ James Robert Redford

---

[5] Although *Holmes* was decided after *Burba*, the *Holmes* Court explained that, "Presumably, because the guidelines deviations benefited the children, the circuit court and the parties never considered that they should explain on the record the reasons for rejecting the MCSFM formula." *Holmes*, 281 Mich App at 589 n 6.