*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KAREN W. MAGDICH,

        Plaintiff/Counterdefendant-
        Appellee/Cross-Appellant,

v

MICHAEL LAWSON MAGDICH,

        Defendant/Counterplaintiff-
        Appellant/Cross-Appellee.

UNPUBLISHED
March 21, 2024

No. 362869
Livingston Circuit Court
LC No. 19-054780-DM

Before: M. J. KELLY, P.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

The parties appeal as of right the judgment of divorce. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Plaintiff, Karen W. Magdich (wife), and defendant, Michael Lawson Magdich (husband), were married in 2001, and their marriage produced two children. Wife is an attorney and is the founder and managing partner of a law firm. Husband holds a master's degree in Japanese and has been a successful executive in the automotive industry—but throughout these proceedings his job changed several times. In December 2019, wife filed a complaint for divorce and husband later filed a counterclaim for divorce.

The trial court entered a pretrial order restraining the parties from unnecessarily depleting marital assets. It also entered a temporary child support order requiring wife to pay husband a certain amount in child support. At a pretrial hearing, the parties explained to the trial court they would arbitrate any remaining issues regarding the division of personal property. The trial court rejected this proposal, stating it would not "piecemeal" unresolved issues to arbitration, and that any remaining personal property issues would be resolved at trial.

The case proceeded to a nine-day trial where the parties accused each other of "excessive" spending from their joint investment account at Charles Schwab (the "Schwab account"). The parties presented the trial court with statements from the Schwab account up to September 2021.

-1-

Both husband and wife testified about a loan husband made to his friend, Bruce Bennett (the "Bennett loan"). According to wife, she only discovered husband made the Bennett loan after she found a check by husband to Bennett. There was also expert testimony from an executive recruiter who noted husband's previous employment as an automotive executive. The expert opined that, although husband was not presently employed,[1] given husband's educational background and experience, husband could obtain executive-level employment.

After trial, the trial court found that each party was entitled to half the value of the Schwab account as of September 20, 2021. With respect to the parties' child support obligations, the trial court imputed $200,000 in income to husband. The trial court allocated the entirety of the Bennett loan against husband's share of the marital estate. The final judgment of divorce was entered on July 1, 2022. This appeal followed.

## II. STANDARDS OF REVIEW

A trial court's factual findings with respect to the division of marital assets are reviewed for clear error. *Olson v Olson*, 256 Mich App 619, 629; 671 NW2d 64 (2003). Where the trial court's factual findings are not clearly erroneous, this Court should only reverse when the trial court's dispositional ruling is unfair and inequitable "in light of the facts[,]" *id*. at 629-630, or if the trial court abused its discretion. *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id*.

This case also involves the trial court's interpretation and application of the Michigan Child Support Formula (MCSF). "Whether the trial court properly applied the [MCSF] to the facts of the case is a question of law that this Court reviews de novo. This Court also reviews de novo the proper interpretation of the MCSF and the applicable statutes." *Borowsky v Borowsky*, 273 Mich App 666, 672; 733 NW2d 71 (2007). "As when interpreting statutes, this Court must ensure compliance with the plain language of the MCSF and may not read anything into the MCSF that is not present." *Diez v Davey*, 307 Mich App 366, 376; 861 NW2d 323 (2014). Any discretionary decisions under the MCSF, such as whether to impute income, are reviewed for an abuse of discretion. *Carlson v Carlson*, 293 Mich App 203, 205; 809 NW2d 612 (2011). Factual findings, however, are reviewed for clear error. *Borowsky*, 273 Mich App at 672.

Issues involving the interpretation of Michigan's domestic relations arbitration act (DRAA), MCL 600.5070 *et seq*., are reviewed de novo. *Miller v Miller*, 474 Mich 27, 30; 707 NW2d 341 (2005). "When interpreting a statute, our goal is to give effect to the Legislature's intent as determined from a review of the language of the statute." *Id*.

---

[1] Husband did own a consulting business at the time of trial. But, it did not appear husband earned much, if any, income from the consulting business.

### III. MARKET VALUE OF THE SCHWAB ACCOUNT

Husband argues that the trial court's award of the Schwab account was disproportionate because, by the time the Schwab account was divided between the parties, the account had lost significant market value from the valuation date of September 20, 2021. We disagree.

"The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Berger v Berger*, 277 Mich App 700, 716-717; 747 NW2d 336 (2008). A court need not make mathematically equal apportionments, "but any significant departure from congruence must be clearly explained." *Butler v Simmons-Butler*, 308 Mich App 195, 208; 863 NW2d 677 (2014).

Husband concedes that the division of the Schwab account was equitable as of September 20, 2021. On appeal, husband challenges the date the Schwab account was actually divided—July 1, 2022—and claims the value of the account had been significantly reduced by fluctuations in the stock market, which reduced his share of the account.

In resolving this issue, we note that dispositional rulings regarding the division of assets are discretionary in nature. *Sparks v Sparks*, 440 Mich 141, 152; 485 NW2d 893 (1992). During trial, the parties presented the September 2021 statement of the Schwab account as evidence of its value. On the basis of this evidence, the trial court set the valuation date for the account as September 20, 2021. Husband does not challenge the trial court's use of the September 2021 statement. Because the trial court's valuation of the Schwab account was on the basis of unchallenged evidence, it was within the trial court's discretion to use this evidence to set the value of the Schwab account. See *Thompson v Thompson*, 189 Mich App 197, 199-200; 472 NW2d 51 (1991) (in setting the value of assets, a court, in its discretion, may use a date other than the date of final disposition).

Further, to value the Schwab account at something other than the September 20, 2021 value would require the reopening of proofs to address this factual issue. As the trial court noted during the proceedings below, the reopening of proofs requires consideration of a variety of factors, including: "(1) the timing of the motion, (2) whether the adverse party would be surprised, deceived, or disadvantaged by reopening the proofs, and (3) whether there would be inconvenience to the court, parties, or counsel." *Mich Citizens for Water Conservation v Nestle Waters North America Inc*, 269 Mich App 25, 51; 709 NW2d 174 (2005), overruled in part on other grounds by *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349; 792 NW2d 686 (2010). Husband makes no argument on appeal that the trial court erred in declining to reopen proofs to address this issue. See *Seifeddine v Jaber*, 327 Mich App 514, 520; 934 NW2d 64 (2019) ("Failure to adequately brief an issue constitutes abandonment."). Therefore, this argument is meritless because there is no basis to conclude the trial court erred when it denied husband's motion as to this issue.

### IV. WIFE'S SPENDING OF SCHWAB ACCOUNT

Husband next argues that the trial court erred when it failed to account for wife's spending out of the Schwab account after September 20, 2021. He asserts that, after September 20, 2021, the Schwab account no longer represented marital funds, and, therefore, any spending by wife after September 20, 2021 should have been subtracted from her share of the marital estate. We disagree.

Again, "[t]he goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Berger*, 277 Mich App at 716-717. A court need not make mathematically equal apportionments, "but any significant departure from congruence must be clearly explained." *Butler*, 308 Mich App at 208. Like the preceding issue, husband believes that, had the Schwab account been divided on September 20, 2021, the division would have been equitable. His argument is that the trial court made an inequitable distribution of assets when it declined to subtract wife's spending from her share of the Schwab account when it was actually divided on July 1, 2022.

Following the conclusion of trial, the trial court entered its factual findings in a written opinion. Husband moved for reconsideration, citing a number of checks and wire transfers purportedly made by wife after September 20, 2021. Attached to this motion were several bank statements, apparently from the Schwab account. We use the terms "purportedly" and "apparently" because there is nothing in the record showing the veracity of these proofs. Indeed, the trial court highlighted this issue in its opinion addressing the motion for reconsideration, noting that the only way it could accept that wife was wrongfully spending from Schwab account was to reopen proofs and subject husband's evidence to adversarial testing. Again, the reopening of proofs would have required a demonstration of: "(1) the timing of the motion, (2) whether the adverse party would be surprised, deceived, or disadvantaged by reopening the proofs, and (3) whether there would be inconvenience to the court, parties, or counsel." *Mich Citizens for Water Conservation*, 269 Mich App at 51. While husband's motion for reconsideration made much of wife's purported spending and the inequitable result of the judgment of divorce, husband made no attempt to explain to the trial court why the above factors were satisfied so as to reopen proofs.

Further, as the trial court pointed out, the parties' post-September 20, 2021 statements showing the value of the Schwab account were available to husband before the case even went to trial. Yet, husband did not attempt to introduce evidence of wife's post-September 20, 2021 spending. Rather, the only proofs offered by husband showing spending from the Schwab account occurred in September of 2021. Whether the trial court erred with respect to the disposition of the Schwab account is considered under the deferential abuse of discretion standard. *Woodington*, 288 Mich App at 355. Here, the trial court's decision to reject husband's request to consider wife's post-September 20, 2021 spending was not an abuse of discretion, because husband (1) failed to timely offer evidence of wife's post-September 2021 spending, and (2) did not make any argument explaining why the reopening of proofs was appropriate in this case.

V. DIVISION OF WIFE'S INCOME

Husband argues that the trial inequitably distributed the marital estate by failing to account for wife's income earned during the pendency of the divorce. He believes that the trial court should have considered wife's income as part of the marital estate and allocated a portion of it to husband. An issue is preserved if it was raised in the proceedings below. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 2; see also *Loutts v Loutts*, 298 Mich App 21, 23; 826 NW2d 152 (2012) (An issue is preserved if it is "raised before, addressed, or decided by the circuit court . . . ."). Issues that are not raised below are not preserved for appellate review. *Tolas Oil*, ___ Mich App at ___; slip op at 2. Husband did not raise the issue of the equitable division of wife's income in the proceedings below. This argument is therefore abandoned, and we decline to consider it now. *Id.*

## VI.  IMPUTATION OF INCOME

## A.  FOUNDATIONAL LAW

In cases where child support is ordered, the amount of child support will be "determined by application of the child support formula developed by the state friend of the court bureau . . . ." MCL 552.605(2).  "Thus, a trial court must presumptively follow the [MCSF].  If the court deviates, it must make an adequate record regarding the mandatory statutory criteria for doing so." *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007).  "[T]he first step in determining a child-support award is to ascertain each parent's net income by considering all sources of income." *Id*.  Usually, this means the court should "ascertain[] 'the actual resources of each parent.' " *Id*., quoting MCL 552.519(3)(a)(*vi*).  But, courts may also "impute income to a parent on the basis of the parent's unexercised ability to pay when supported by adequate fact-finding that the parent has an actual ability and likelihood of earning the imputed income." *Stallworth*, 275 Mich App at 284-285.  "[B]efore imputation is permitted, the trial court must determine if the parent is voluntarily unemployed, underemployed, or has an unexercised ability to earn." *Clarke v Clarke*, 297 Mich App 172, 181; 823 NW2d 318 (2012).

Under the MCSF, if the trial court determines the parent is "voluntarily unemployed, underemployed, or has an unexercised ability to earn," the next step is to determine the amount of income to impute to that parent.  2021 MCSF 2.01(G).  "The amount of potential income imputed should be sufficient to bring that parent's income up to the level it would have been if the parent had not reduced or waived income." 2021 MCSF 2.01(G)(1).  The MCSF directs courts to:

Use relevant factors both to determine whether the parent in question has an actual ability to earn and a reasonable likelihood of earning the potential income. To figure the amount of potential income that parent could earn, consider the following when imputing an income:

(a) Prior employment experience and history, including earnings history, and reasons for any termination or changes in employment.

(b) Educational level, literacy, and any special skills or training.

(c) Physical and mental disabilities that may affect a parent's ability to work, or to obtain or maintain gainful employment.

(d) Availability for work (exclude periods when a parent could not work or seek work, e.g., hospitalization, incarceration, debilitating illness, etc.).

(e) Availability of opportunities to work in the local geographical area.

(f) The prevailing wage rates and number of hours of available work in the local geographical area.

(g) Diligence exercised in seeking appropriate employment.

(h) Evidence that the parent in question is able to earn the imputed income.

(i) Personal history, including present marital status, age, health, residence, means of support, criminal record, ability to drive, and access to transportation, etc.

(j) The presence of the parties' children in the parent's home and its impact on that parent's earnings.

(k) Whether there has been a significant reduction in income compared to the period that preceded the filing of the initial complaint or the motion for modification. [2021 MCSF 2.01(G)(2).]

## B. HUSBAND'S ARGUMENTS

Husband's argument as to this issue makes no sense. He apparently challenges the trial court's imputation of income for the time he was unemployed during the pendency of this divorce. But, his arguments on appeal misapply the dates he was unemployed. For example, he says he "became unemployed on December 1, 2019." This is untrue. Husband was previously employed at Axalta Coating Systems, Inc. ("Axalta"), and Lydall Thermal & Acoustical Systems, Inc. ("Lydall"), respectively. His unemployment from Axalta started in July 2019, and his unemployment from Lydall started on November 13, 2020. He further contends that "the imputation of income prior to September 1, 2021 (Dec. 1, 2019 plus 9 months), was an abuse of discretion." Obviously, September 1, 2021 is more than nine months after December 1, 2019, so it is unclear what husband means when he says that the trial court abused its discretion when it imputed income before September 1, 2021.

"A party may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position. Failure to adequately brief an issue constitutes abandonment." *Seifeddine*, 327 Mich App at 519-520 (citation omitted). Resolution of husband's argument requires this Court to make several presumptions of his argument, which is inappropriate. Therefore, husband's arguments as to this issue are abandoned.

## C. WIFE'S ARGUMENTS

On cross-appeal, wife argues the evidence presented during trial showed that husband could have earned more money and therefore the trial court erred when it imputed only $200,000 towards husband's child support obligation. We disagree.

Again, once a trial court decides to impute income, the next step is to determine the amount. 2021 MCSF 2.01(G)(2). To do this, the court considers a variety of factors outlined in 2021 MCSF 2.01(G)(2). The trial court made a detailed analysis of these factors in determining the amount of income to impute to husband. On cross-appeal, wife challenges the trial court's decision to impute $200,000 per year of income to husband. In support of this argument, she explains that, historically speaking, husband had earned more than $200,000 per year.

A parent's "[p]rior employment experience and history, including earnings history, and reasons for any termination or changes in employment" is one of the factors in determining the amount of income to impute to a parent. 2021 MCSF 2.01(G)(2)(a). The trial court explicitly considered this factor, noting husband's income at his previous jobs. But, a parent's historical income is only one of many factors a trial court should consider. On cross-appeal, wife does not

explain why the trial court erred with respect to the remaining factors under 2021 MCSF 2.01(G)(2), which presumably caused the trial court to impute to husband less than his historical earnings. The trial court did not abuse its discretion in this regard because the trial court explicitly considered husband's historical earnings. Wife's argument to the contrary fails to explain why the trial court's consideration of the remaining factors was erroneous.

## VII. ARBITRATION OF PERSONAL PROPERTY

Husband next argues the trial court erred when it rejected the parties' oral agreement to arbitrate any contested issues involving the distribution of their personal property. We disagree.[2]

With respect to arbitration agreements, the DRAA provides:

Parties to an action for divorce, annulment, separate maintenance, or child support, custody, or parenting time, or to a postjudgment proceeding related to such an action, may stipulate to binding arbitration by a signed agreement that specifically provides for an award with respect to 1 or more of the following issues:

(a) Real and personal property.

(b) Child custody.

(c) Child support, subject to the restrictions and requirements in other law and court rule as provided in this act.

(d) Parenting time.

(e) Spousal support.

(f) Costs, expenses, and attorney fees.

(g) Enforceability of prenuptial and postnuptial agreements.

(h) Allocation of the parties' responsibility for debt as between the parties.

(*i*) Other contested domestic relations matters. [MCL 600.5071.]

---

[2] We also disagree with wife's assertion that husband's argument as to this issue is an appellate parachute. Under the appellate parachute theory, a party "may not assign as error on appeal something that [they] deemed proper in the lower court because allowing [them] to do so would permit [that party] to harbor error as an appellate parachute." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). After the trial court rejected the parties' request to arbitrate remaining issues of personal property, husband's attorney responded "I understand." Husband's acknowledgment of the trial court's decision is not the same as an agreement that the trial court's decision was "proper." Therefore, his presented argument is not an appellate parachute.

At the final pretrial hearing, husband asserted that the parties intended to arbitrate any remaining issues of personal property, which the trial court rejected. Husband argues on appeal the trial court's denial of the parties' oral agreement to arbitrate the remaining issues involving personal property distribution was in "direct contravention of MCL 600.5071(i)." We disagree. The plain language of this statute indicates it only applies to parties' "signed agreement[s]." MCL 600.5071. It is undisputed this case does not involve a signed arbitration agreement; therefore, there is no error under MCL 600.5071.

Husband argues on appeal that, under *Bayati v Bayati*, 264 Mich App 595, 599; 691 NW2d 812 (2004), "a written agreement is not necessary." The relevant discussion in *Bayati* is as follows:

Plaintiff also contends that he did not agree to arbitrate the issue and that the language of item G requires both parties to agree to arbitrate an issue. However, the record does not support plaintiff's contention. No written agreement exists regarding arbitrating this issue but plaintiff admits that the parties discussed it with the arbitrator before arbitration and that defendant sent him a letter stating that the issue was going to be arbitrated. There is no indication that plaintiff responded to this letter with any objection to arbitrating this issue, and the record contains no evidence that plaintiff raised such an objection before the arbitrator. Moreover, it is clear that plaintiff testified regarding change of domicile before the arbitrator. He presented his own argument, specifically discussing the lack of contact that defendant's uncle had with the children and the presence of plaintiff's own family members in Michigan. Plaintiff did not raise any objection to arbitration until long after the arbitrator issued his opinion supporting the change of domicile. Given the lack of objection on the record and plaintiff's testimony before the arbitrator, we conclude that plaintiff agreed to arbitrate the issue. [264 Mich App at 599-600.]

Clearly *Bayati did* involve a written arbitration agreement; the dispute was the interpretation of that agreement. Thus, husband's assertion that a written agreement is unnecessary is meritless.

VIII. BENNETT LOAN

Husband further argues the trial court imposed an inequitable ruling when it attributed the Bennett loan completely against husband's share of the marital estate. We disagree.

Husband makes the confusing argument on appeal that the division of the marital estate was not "fair and equitable . . . . And the reason it is unfair and inequitable is straightforward—$25,000 from marital funds means, once the marital estate is being divided equally, that $12,500 of the loan represents [husband's] portion of the marital estate, and $12,500 represents [wife's] share." In making this argument, it appears husband believes the trial court's division of the marital estate must be mathematically equal. Again, "[t]he goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances. The trial court need not divide the marital estate into mathematically equal portions, but any significant departure from congruence must be clearly explained." *Berger*, 277 Mich App at 716-717 (citation omitted). While the ultimate disposition of the Bennett loan was not "equal," husband's arguments on appeal do not explain why the trial court's decision to attribute the Bennett

loan to husband was "inequitable." In the absence of such an argument, this Court cannot conclude the distribution of the marital estate was inequitable.

It is also noteworthy that the trial court explained at oral argument on husband's motion for partial satisfaction that husband's argument regarding the Bennett loan was meritless. The trial court clarified that husband made a "unilateral decision" when he made the Bennett loan, and, therefore, the amount of the entire loan was attributable to husband's share of the marital estate. Husband does not dispute that the Bennett loan was made unilaterally. Therefore, it is unclear why he believes attributing the Bennett loan against his share was inequitable.

Affirmed.

/s/ Michael J. Kelly
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron