CLARKE v CLARKE

Docket No. 303580. Submitted April 4, 2012, at Detroit. Decided June 26,
     2012, at 9:10 a.m.

Plaintiff, Edwin R. Clarke, III, and defendant, Cynthia A. Clarke,
     entered into a consent judgment of divorce in the Washtenaw
     Circuit Court, which adopted the terms of the parties' settlement
     agreement. The parties shared joint physical and legal custody of
     their son and no child support was awarded at that time. Plaintiff
     thereafter lost his job, sought and was awarded child support. In
     2010, plaintiff, who was 64 years old, looked into the possibility of
     receiving social security retirement benefits then, as opposed to
     waiting for a larger monthly amount were he to wait until the age
     of 66. The parties' son would also have been eligible for dependent
     benefits each month until he either turned 18 years old or
     graduated from high school if plaintiff had opted to receive social
     security benefits at the age of 64. Plaintiff attempted to negotiate
     an agreement with defendant on the allocation of the dependent
     benefit between the two households if plaintiff opted to begin
     collecting social security retirement benefits at the earlier time.
     Plaintiff applied for and received social security retirements ben-
     efits from July 2010 through September 2010 at which point
     plaintiff discovered that the dependent benefit had been sent to
     defendant since July 2010 without his knowledge. Plaintiff with-
     drew his social security application and repaid to the social
     security administration all monies he had received. The friend of
     the court hearing referee recommended in December 2010 that
     defendant's obligation to pay child support be terminated on the
     basis that plaintiff's eligibility for social security benefits should be
     imputed as income, and that plaintiff should then pay child
     support to defendant because their son had been living with her
     exclusively since January 2010 following a disagreement between
     plaintiff and the son. The court, Archie C. Brown, J., imputed
     plaintiff's social security benefits as income, reasoning that it was
     income plaintiff had the ability to earn but had voluntarily
     eliminated. The court ordered plaintiff to pay child support
     retroactive to the date of filing of the petition, discontinued
     defendant's child support obligation, and granted defendant the
     federal dependency tax exemption for the 2010 tax year because

the parties' son had not spent a night with plaintiff since their argument in January 2010. Plaintiff appealed by leave granted.

The Court of Appeals *held*:

1. Whether the trial court properly applies the Michigan Child Support Formula (MCSF) is a question of law that is reviewed de novo. Under MCL 552.519(3)(a)(vi), the State Court Administrative Office Friend of the Court Bureau has authority to develop a formula for establishing and modifying child support obligations. The trial court must use the formula when determining child support and may deviate from the formula only if the formula would be unjust or inappropriate based on the facts of the case. The trial court must set forth on the record the reasons for the deviation. MCL 552.605(2).

2. Under 2008 MCSF 2.01(B), the objective for determining a parent's income is to establish as accurately as possible how much money a parent has available for support. When imputing income the amount should be sufficient to bring the parent's income up to the level it would have been if the parent had not voluntarily reduced or waived income. 2008 MCSF 2.01(G)(1). Income in part includes distributed payments from social security benefits. 2008 MCSF 2.01(C)(3). While only retirement benefits that are actually paid from the Social Security Administration and delivered to the recipient may be considered part of a parent's income for purposes of calculating child support obligations under the MCSF, under 2008 MCSF 2.01(G), potential income may be imputed to a parent when he or she is voluntarily unemployed or underemployed or has an unexercised ability to earn income. Applying the factors set forth in 2008 MCSF 2.01(G)(2), the trial court must determine whether the parent has an actual ability to earn and reasonable likelihood of earning the potential income before imputing the income and the court's decision must be supported by adequate fact-finding. When the evidence establishes that a parent has declined to receive early social security retirement benefits in order to receive a higher benefit at a later time, that parent has not demonstrated an unexercised ability to earn from which income could be imputed. The court erred by holding that plaintiff's refusal to collect early social security benefits in and of itself constituted the unexercised ability to earn. The trial court needed to make findings as to why plaintiff chose to not continue with his election for social security retirement benefits to determine whether plaintiff has an unexercised ability to earn income from which income could be imputed.

3. Retroactive increases and decreases in child support payments are prohibited, but they are allowed for the period during

which there is a pending petition for modification commencing from the date that notice of the petition was given to the payer or recipient of support. MCL 552.603(2). Because the proof of service indicates that plaintiff did not receive notice of defendant's petition to modify child support until July 7, 2010, if the trial court orders plaintiff on remand to pay child support, any order may only be retroactive to that date of notice. The court erred by making the original award now on appeal retroactive to June 15, 2010, the date on which defendant filed the petition.

4. A trial court has authority to modify a child support order regarding the federal dependency tax exemption because it is considered part of the child support award. Under MCL 552.17(1), a trial court may modify a child support order upon a showing by the petitioning party that there has been a change in circumstances sufficient to justify the modification. The trial court did not clearly err by finding that the parties' child support order in which they alternated claiming the yearly federal dependency tax exemption was premised on the understanding that he would spend one day more than half time with defendant in odd numbered years and plaintiff in even numbered years. The trial court did not abuse its discretion by modifying the child support order and awarding the federal dependency exemption allocation to defendant. The parties' son exclusively resided with defendant from January 2010, which constituted a change in circumstances sufficient to modify the exemption allocation and award it to defendant.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. PARENT AND CHILD — CHILD SUPPORT — IMPUTED INCOME — SOCIAL SECURITY RETIREMENT BENEFITS — MICHIGAN CHILD SUPPORT FORMULA.

When calculating child support obligations, under the Michigan Child Support Formula (MCSF), potential income may be imputed to a parent when he or she is voluntarily unemployed or underemployed or has an unexercised ability to earn income; applying the factors set forth in 2008 MCSF 2.01(G)(2), the trial court must determine whether the parent has an actual ability to earn and reasonable likelihood of earning the potential income before imputing the income and the court's decision must be supported by adequate fact-finding; when the evidence establishes that a parent has declined to receive early social security retirement benefits in order to receive a higher benefit at a later time, that parent has not demonstrated an unexercised ability to earn from which income could be imputed.

2. PARENT AND CHILD — CHILD SUPPORT — MODIFICATION OF CHILD SUPPORT
      ORDERS — RETROACTIVE.

   Retroactive increases and decreases in child support payments are
      prohibited, but they are allowed for the period during which there
      is a pending petition for modification commencing from the date
      that notice of the petition was given to the payer or recipient of
      support (MCL 552.603[2]).

3. PARENT AND CHILD — CHILD SUPPORT — MODIFICATION OF CHILD SUPPORT
      ORDER — FEDERAL DEPENDENCY TAX EXEMPTIONS.

   A trial court has authority to modify a child support order regarding
      the federal dependency tax exemption because it is considered part
      of the child support award; a child support order may be modified
      upon a showing by the petitioning party that there has been a
      change in circumstances sufficient to justify the modification.

*Laurie S. Longo* for Edwin R. Clarke, III.

Cynthia A. Clarke *in propria persona.*

Before: MARKEY, P.J., and MURRAY and SHAPIRO, JJ.

MURRAY, J. Plaintiff, Edwin R. Clarke, III, appeals by
leave granted a child support order imputing income to
him and awarding child support to defendant, Cynthia
A. Clarke. We affirm in part, reverse in part, and
remand for further proceedings.

## I. BACKGROUND

Plaintiff and defendant married in 1992 and had one
son, Edwin R. Clarke, IV, who was born in 1994. A
consent judgment of divorce, which adopted the terms
of the parties' settlement agreement, was entered on
June 28, 2007. According to the judgment, plaintiff and
defendant were to share joint physical and legal custody
of Edwin. No child support was awarded to either
parent, but the judgment stated that child support may
be awarded in the future if

(a) [there is] a substantial court-ordered departure from equal parenting time or (b) a catastrophic change in income, where "catastrophic change in income" means that a party becomes physically or mentally disabled and is, therefore, unable to work, or a party is unemployed and is unable to find comparable employment following 120 days of his or her best efforts to do so. If child support becomes payable due to a loss of employment, the Court will have the discretion to make child support retroactive from the date of the petition for child support to the date that there was a change of income due to loss of employment.

Plaintiff lost his job on October 15, 2007, and on April 14, 2008, he moved for a change of physical custody and for the payment of child support. The trial court denied plaintiff's motion for a change in physical custody. But the trial court also found a catastrophic change in income and ordered defendant to pay plaintiff $485 a month in child support. Defendant disputed the child support award, and it was ultimately modified to $300 a month in November 2008.

In January 2010, plaintiff and Edwin had a disagreement. Afterwards, plaintiff asked defendant if Edwin could return to her home earlier than provided for in the parenting-time schedule. Defendant agreed and Edwin has been exclusively residing with defendant ever since. On June 15, 2010, defendant, in propria persona, petitioned for a change in child support. Defendant requested that the child support payment to plaintiff cease and that plaintiff be required to pay defendant child support.

Also during 2010, plaintiff, who was 64 years old, looked into the possibility of receiving social security retirement benefits. According to plaintiff's calculations, if he began receiving social security retirement benefits in 2010, he would have been entitled to $1,968 a month; however, if he waited until November 2012,

when he turns 66 years old, he would be entitled to $2,347 a month. Plaintiff also became aware that if he began receiving retirement benefits in 2010, Edwin would be entitled to receive dependent benefits of $1,173 each month until either his eighteenth birthday or his graduation from high school. Upon learning about this dependent benefit, plaintiff contacted defendant through a series of e-mails. In the e-mails, plaintiff attempted to negotiate an agreement with defendant to share in Edwin's dependent benefit. Specifically, plaintiff wanted defendant to confirm him as the representative recipient of Edwin's benefits and to agree to an allocation of benefits between the two households. Initially, plaintiff suggested defendant receive $200 a month from Edwin's entitlement, but later increased his offer to $400, and then to half, or $586.50.

In July 2010, plaintiff applied for and began receiving social security retirement benefits. Despite plaintiff's belief that the Social Security Administration (SSA) would hold the dependent benefit payment until he and defendant had reached an agreement, defendant began receiving Edwin's dependent benefit in July 2010. Social security benefits were received by plaintiff and Edwin from July 2010 through September 2010. When plaintiff discovered in September 2010 that Edwin's dependent benefit was being paid to defendant, he withdrew his social security application and repaid to the SSA all the monies received by himself and Edwin.

Subsequently, in December 2010, the friend of the court issued a child support recommendation that defendant's obligation to pay child support to plaintiff be terminated and that plaintiff's eligibility for social security retirement benefits be imputed as income in calculating child support. By imputing the social security retirement benefit to plaintiff, the friend of the

court recommended that plaintiff pay defendant $593.50 a month in child support. Plaintiff objected to the friend of the court recommendation, arguing that only distributed income from the SSA could be used in the calculation of income. Defendant urged the trial court to follow the friend of the court recommendation by imputing the retirement benefits as income to plaintiff.

Based on the parties' written submissions, the trial court determined that it had the authority to impute plaintiff's social security benefits as income because it was income that he had the ability to earn but had voluntarily eliminated. The court ordered plaintiff to pay $578 a month in child support and discontinued defendant's child support obligation, with the child support adjustment effective retroactively to June 15, 2010. The order also granted defendant the federal dependency tax exemption for the 2010 tax year because Edwin had not spent a single night with plaintiff since their argument in January 2010.

After the trial court denied plaintiff's motion for reconsideration, plaintiff filed an application for leave to appeal, which we subsequently granted. *Clarke v Clarke*, unpublished order of the Court of Appeals, entered June 17, 2011 (Docket No. 303580).

## II. ANALYSIS

### A. IMPUTATION OF UNDISTRIBUTED SOCIAL SECURITY RETIREMENT BENEFITS

Plaintiff argues that under § 2.01(C)(3) of the Michigan Child Support Formula (MCSF) only distributed social security retirement benefits may be considered as income. Generally, child support orders, including orders modifying child support, are reviewed for an abuse

of discretion. *Malone v Malone*, 279 Mich App 280, 284; 761 NW2d 102 (2008). However, whether the trial court properly applied the MCSF presents a question of law that we review de novo. *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007). On the other hand, factual findings underlying the trial court's decisions are reviewed for clear error. *Borowsky v Borowsky*, 273 Mich App 666, 672; 733 NW2d 71 (2007).

MCL 552.519(3)(a)(*vi*) grants the State Court Administrative Office Friend of the Court Bureau the authority to develop a formula for establishing and modifying child support obligations. A trial court must use the formula established by the Friend of the Court Bureau when determining child support, and may deviate from the formula only if the formula would be unjust or inappropriate based on the facts of the case. The trial court must set forth in writing or on the record the reasons for the deviation. MCL 552.605(2); *Paulson v Paulson*, 254 Mich App 568, 572; 657 NW2d 559 (2002). Just as with a statute, courts must comply with the plain language of the MCSF, and may not read language into the MCSF that is not present. *Peterson v Peterson*, 272 Mich App 511, 518; 727 NW2d 393 (2006).

Under the MCSF, the stated objective for determining a parent's income is to "establish, as accurately as possible, how much money a parent should have available for support." 2008 MCSF 2.01(B). With respect to imputation of income, one of the primary goals of the MCSF is to ensure that "[t]he amount of potential income imputed should be sufficient to bring that parent's income up to the level it would have been if the parent had not voluntarily reduced or waived income." 2008 MCSF 2.01(G)(1). Income is defined to include many items, but relevant to social security benefits, it is defined as:

> *Distributed* profits or *payments from* profit-sharing, a pension or retirement, an insurance contract, an annuity, trust fund, deferred compensation, retirement account, *social security*, unemployment compensation, supplemental unemployment benefits, disability insurance or benefits, or worker's compensation. [2008 MCSF 2.01(C)(3) (emphasis added).]

Plaintiff argues that his social security retirement benefits may not be included as income unless he actually receives payments from the SSA. That much is true. Black's Law Dictionary (9th ed) defines "payment" as the "[p]erformance of an obligation by the delivery of money . . . ." Hence, based on the plain meaning of "payment," it is clear that only the retirement benefits that are actually paid from the SSA and delivered to the recipient may be considered part of a parent's income for purposes of calculating child support under the MCSF. Here, plaintiff was not receiving social security payments from the SSA at the time the trial court decided the motion. The evidence instead shows that plaintiff chose not to continue to receive his social security retirement benefits either because he determined that the dependent benefits were not coming to him, or because he re-determined the economic value of receiving the benefits early. Either way, plaintiff was not receiving payments from the SSA, and therefore these yet-to-be-paid benefits cannot be deemed income under § 2.01(C).

That only paid social security retirement benefits may be considered income does not, however, address the dispositive issue, which is whether plaintiff's social security retirement benefits are potential income that may be imputed to him. According to the MCSF, under the following circumstances "income" can include income not actually earned:

> [w]hen a parent is *voluntarily unemployed or underem-*
> *ployed,* or has an *unexercised ability to earn, income* in-
> cludes the *potential* income that parent could earn, subject
> to that parent's actual ability. [2008 MCSF 2.01(G) (em-
> phasis added, final emphasis in the original).]

Accordingly, before imputation is permitted, the trial
court must determine if the parent is voluntarily un-
employed, underemployed, or has an unexercised ability
to earn. *Stallworth,* 275 Mich App at 286-287. "[A]
court's decision to impute income must be 'supported
by adequate fact-finding that the parent has an actual
ability and likelihood of earning the imputed income.' "
*Carlson v Carlson,* 293 Mich App 203, 206; 809 NW2d
612 (2011), quoting *Stallworth,* 275 Mich App at 285.

The trial court utilized the following reasoning for
imputing plaintiff's unrealized social security retire-
ment benefits as income:

> Father [plaintiff] objects to the imputation of income.
> The referee imputes to Father Social Security benefits *that*
> *he is eligible for.* The parties argue that Father applied for
> Social Security. Received benefits for a short period of time,
> and then objected when the minor child's Social Security
> allotment went to Mother. *For whatever reason, Father has*
> *since withdrawn his request for Social Security Benefits*
> *and is no longer receiving same.*
>
> The Court has the authority to impute income to a party
> for purposes of calculating support. When a party elimi-
> nates income and the court concludes that the party has
> the ability to earn an income and pay child support, it is not
> error to order support based on the unexercised ability to
> earn. See *Ghidotti* [v] *Barber,* 459 Mich 189[;] 586 NW2d
> 883 (1998)[;] *Olson* [v] *Olson,* 189 Mich App [620] 473
> NW2d 772 (1991)[;] *Daniels* [v] *Daniels,* 165 Mich App
> 726[;] 418 NW[2]d 924 (1988)[;] *Rohloff* [v] *Rohloff,* 161
> Mich App 766[;] 411 NW2d 484 (1987).
>
> Father's pleadings are clear that he has little to no
> income. "He has made many proposals and has had some

engagements, but these have not been sufficient to cover his promotion, travel, telephone and required office supplies." "After doggedly pursuing openings for a couple of years that perfectly matched his background and experience, only to be passed over for a younger applicant[.]"

In this instance, *it is appropriate to impute to Father his Social Security benefits as income he has voluntarily eliminated and has the ability to earn.* Father's recitation of the law is misapplied and/or misunderstood. Section II.D of the MCSF manual allows the Court to consider dependent benefits from Social Security for the purpose of making a child support determination. The 2007 [sic] Michigan Child Support Formula Manual section 2.01(I) specifically states that the Court will "attribute all social security retirement, survivor's, or disability program dependent benefits based on the earnings of a parent paid for the children-in-common with the other parent as the earning parent's income." Furthermore, the child support prognosticator takes into consideration the benefit to Father and the benefit to his minor child and apportions it accordingly. Father's arguments to not impute his Social Security benefits as income fails. [Emphasis added.]

Initially, we point out that the trial court erred by applying § 2.01(I) to impute income to plaintiff. As noted by the trial court, 2008 MCSF 2.01(I) instructs that a court should "[a]ttribute all social security retirement, survivor's, or disability program dependent benefits based on the earnings record of a parent *paid for* the children-in-common with the other parent as the earning parent's income." (Emphasis added.) This language is an instruction regarding which parent's income is affected for purposes of child support when certain benefits (including social security retirement benefits) are paid on behalf of the child-in-common, and has no application in determining whether *potential* income can be *imputed* to a parent. Instead, it is § 2.01(G) that provides the guidelines for determining and calculating the imputation of potential income.

As noted, before income may be imputed to a parent, the trial court must first find that the parent is voluntarily unemployed, underemployed, or has an unexercised ability to earn. In determining that imputation of income was appropriate, the trial court noted that "[f]ather's pleadings are clear that he has little to no income[,]" and that plaintiff's social security retirement benefits were "income he voluntarily eliminated and has the ability to earn." Thus, the trial court found that plaintiff had an unexercised ability to earn income by receiving the social security retirement benefits, but did not find that plaintiff's lack of income was a result of being underemployed or that he was voluntarily unemployed. *Stallworth*, 275 Mich App at 286-287.

Once the trial court determines that a parent is voluntarily unemployed, underemployed, or has an unexercised ability to earn, § 2.01(G)(2) instructs a court to "[u]se relevant factors both to determine whether the parent in question has an actual ability to earn and a reasonable likelihood of earning the potential income," which are:

(a) Prior employment experience and history, including reasons for any termination or changes in employment.

(b) Educational level and any special skills or training.

(c) Physical and mental disabilities that may affect a parent's ability to obtain or maintain gainful employment.

(d) Availability for work (exclude periods when a parent could not work or seek work, e.g., hospitalization, incarceration, debilitating illness, etc.).

(e) Availability of opportunities to work in the local geographic area.

(f) The prevailing wage rates in the local geographical area.

(g) Diligence exercised in seeking appropriate employment.

(h) Evidence that the parent in question is able to earn the imputed income.

(i) Personal history, including present marital status and present means of support.

(j) The presence of the parties' children in the parent's home and its impact on that parent's earnings.

(k) Whether there has been a significant reduction in income compared to the period that preceded the filing of the initial complaint or the motion for modification. [2008 MCSF 2.01(G)(2).]

"These factors generally ensure that adequate fact-finding supports the conclusion that the parent to whom income is imputed has an actual ability and likelihood of earning the imputed income." *Berger v Berger*, 277 Mich App 700, 725-726; 747 NW2d 336 (2008). Here, there is nothing in the record or in the trial court's order to suggest that it considered any factor listed in § 2.01(G)(2) before it imputed income to plaintiff. Of course, because the trial court was only addressing plaintiff's refusal to continue receiving the payment of a statutorily determined benefit, as opposed to the typical imputation scenario of whether a parent could have earned income through some type of employment, most of the factors do not even come into play.

Nonetheless, we conclude that the trial court erred by holding that plaintiff's refusal to collect early social security retirement benefits in and of itself constituted the unexercised ability to earn. Instead, we hold that when the evidence establishes that a parent has declined to receive early social security retirement benefits in order to receive a higher benefit at a later time, the parent has not demonstrated an unexercised ability to earn.[1] The rationale of *Moore v Moore*, 242 Mich App

---

[1] The monthly distribution a person receives once they apply for social security retirement benefits depends on several factors, including the

652; 619 NW2d 723 (2000), supports our conclusion. In *Moore*, the defendant husband objected to the plaintiff wife's motion to increase alimony payments because the plaintiff had not exercised her ability to collect payments from the defendant's pension. Thus, the defendant argued that the potential pension benefits should be imputed as part of the plaintiff's income. The trial court refused to impute the potential pension income, and stated that it would not consider the pension benefits as income to either party until that party began receiving the pension benefits. *Id.* at 653-654. This Court held that whether the potential pension benefits could be imputed as income depended upon whether making an early election to receive benefits from the pension would result in a reduced benefit:

> In this case, in determining whether imputing income to plaintiff was appropriate, the court should have considered whether plaintiff could elect to draw her share of the pension now without any reduction in benefits. If this is the case, we believe that plaintiff would be voluntarily reducing her income. Under this situation, *Healy* [*v Healy*, 175 Mich App 187; 437 NW2d 355 (1989)] applies and the income should be imputed to plaintiff, if she did not receive the benefits currently. On the other hand, if by taking her share of the pension now she would receive a reduced amount, it is inappropriate to impute the pension benefits as income. *For plaintiff to defer election of pension benefits to a later date when the benefits would be larger should not be viewed as a voluntary reduction in income, but rather as a possibly prudent investment strategy.* [*Id.*, at 655 (emphasis added).]

---

person's age when applying for benefits, the person's full retirement age, how long the person worked, and how much the person earned. See 42 USC 401 *et seq*. However, an individual who elects to receive benefits before full retirement age will suffer a permanent reduction in benefits. 42 USC 402(q)(1).

We agree with the *Moore* Court's conclusion. If the evidence shows that a parent would receive the same social security benefit regardless of when he or she elected to receive the distributions, and absent some other compelling reason, then the decision to defer the payment may properly be characterized as a voluntary reduction in income. But if the evidence shows that a parent would receive a larger benefit if he or she decided to defer payment until a later time, and again absent any evidence suggesting a contrary motivation,[2] then such a decision could properly be characterized as a prudent investment strategy.

This case, however, is unusual for two reasons. First, plaintiff did not merely elect to receive his early benefits. Instead, he elected and received them and then changed his mind and returned all benefits several months later. Second, the trial court made no finding as to *why* plaintiff accepted and then declined his election, instead indicating that he did so "for whatever reason." Hence, this is not a simple case where the evidence points to a decision based solely on electing to forego early retirement benefits so that a larger monthly benefit can be recouped later. Instead, there is some evidence that defendant may have been motivated by another reason—defendant's receipt of the child's dependent benefit—for his change of heart,[3] even

---

[2] We recognize that the payor's motivation is not dispositive, and in most child support situations it is not relevant at all. But, we have previously stated that "a party's motivation in voluntarily reducing his or her income is an appropriate factor for the trial court to consider in determining a party's ability to pay." *Rohloff*, 161 Mich App at 775. Motivation may be relevant here only because of the e-mails between the parties and plaintiff's decision to revoke his election and return his benefits once he found out that defendant was receiving the dependent benefits.

[3] Even if this were the reason plaintiff made his decision, it could still be considered a prudent investment strategy given the short duration that the dependent benefits would be paid. The trial court is best-suited to decide this fact-based issue.

though the objective evidence shows that plaintiff's decision will result in him subsequently receiving a higher monthly distribution. Accordingly, we remand to the trial court to determine the reason(s) why plaintiff chose not to continue with his election, the answer to which will determine whether imputation of the social security retirement benefits as income should occur. If the trial court finds that plaintiff was motivated by an economically driven investment strategy, then it should conclude that plaintiff does not have the unexercised ability to earn income. For these reasons, we reverse the trial court's order imputing social security retirement benefits as income to plaintiff and remand for further proceedings.

### B. RETROACTIVE MODIFICATION

Plaintiff asserts that he did not receive notice of defendant's June 15, 2010, petition to modify child support until July 7, 2010, and that the trial court erred by modifying the child support order retroactively to June 15, 2010. While MCL 552.603(2) prohibits both retroactive increases and decreases in child support payments, *Harvey v Harvey*, 237 Mich App 432, 437-438; 603 NW2d 302 (1999), the retroactive modification of a child support order is permitted for the period during which there is a pending petition for modification, commencing from the "date that notice of the petition was given to the payer or recipient of support," MCL 552.603(2). The decision whether to retroactively apply a modification is a matter within the trial court's discretion. *Varga v Varga*, 173 Mich App 411, 417; 434 NW2d 152 (1988). But equitable circumstances are not appropriate considerations when applying MCL 552.603(2) and a flexible interpretation of the statute is precluded. *Waple v Waple*, 179 Mich App 673, 677; 446 NW2d 536 (1989).

Here the lower court record shows that defendant filed her petition on June 15, 2010, but the proof of service for the hearing regarding the petition to modify child support is dated July 7, 2010. Thus, on remand, if the trial court orders plaintiff to pay child support it may only retroactively modify the child support order to the date that plaintiff received notice of defendant's petition pursuant to MCL 552.603(2), which was July 7, 2010.

C. ALLOCATION OF THE FEDERAL DEPENDENCY TAX EXEMPTION

Plaintiff also asserts that the trial court lacked the authority to award defendant the federal dependency tax exemption for Edwin. But as stated by this Court in *Fear v Rogers*, 207 Mich App 642, 646-647; 526 NW2d 197 (1994), the trial court has the authority to modify an order regarding the federal dependency tax exemption because it is considered part of the child support award. See *Frain v Frain*, 213 Mich App 509, 512; 540 NW2d 741 (1995) ("[I]t is within the authority of state courts in domestic relations matters to award the federal income tax dependency exemptions for the minor children."). According to MCL 552.17(1),[4] a child support order may be modified by the trial court "upon a showing by the petitioning party of a change in circumstances sufficient to justify [the] modification." *Aussie v Aussie*, 182 Mich App 454, 463; 452 NW2d 859 (1990); see also *Maier v*

---

[4] MCL 552.17(1) states:

After entry of a judgment concerning annulment, divorce, or separate maintenance and on the petition of either parent, the court may revise and alter a judgment concerning the care, custody, maintenance, and support of some or all of the children, as the circumstances of the parents and the benefit of the children require.

*Brablec*, 125 Mich App 511, 513; 336 NW2d 39 (1983) ("A trial court has the statutory power to modify orders for child support upon a showing by the petitioning party of a change in circumstances sufficient to justify modification.") (quotation marks and citations omitted). "The party challenging the modification on appeal bears the burden of showing a clear abuse of discretion which convinces this Court that it would have reached a different result." *Aussie*, 182 Mich App at 463.

According to the divorce judgment, the parties agreed to alternate the yearly federal dependency tax exemption for Edwin:

> In the odd numbered years Edwin will spend one day more than half time with Defendant, and Defendant will be entitled to claim head of household filing status and to claim Edwin as a dependent. In the even numbered years Edwin will spend one day more than half time with Plaintiff, and Plaintiff will be entitled to claim head of household filing status and to claim Edwin as a dependent. Each party will execute any IRS documents necessary to effectuate this provision.

The trial court's finding that this agreement was premised upon the understanding that Edwin would "spend one day more than half time" with defendant in odd numbered years, and "one day more than half time" with plaintiff in even numbered years, was not clearly erroneous. Both parties acknowledge that since January 2010, Edwin has been exclusively residing with defendant. Thus, there was a change in circumstances sufficient to modify the exemption allocation, and accordingly, the trial court's decision to modify the order and award the federal dependency tax exemption for Edwin to defendant for the 2010 tax year was not an abuse of discretion.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

No costs, neither party having prevailed in full. MCR 7.219(A).

MARKEY, P.J., and SHAPIRO, J., concurred with MURRAY, J.