*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARVIN JAMES BRUSKI,

        Plaintiff-Appellee,

v

JOANNA RUTH MOJA,

        Defendant-Appellant.

UNPUBLISHED
May 23, 2025
1:56 PM

No. 368916
Presque Isle Circuit Court
LC No. 10-083394-DM

Before: PATEL, P.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's order retroactively modifying child support. We affirm.

## I. BACKGROUND

The parties divorced in 2010. At that time, both of their children, JB and AB, were under 18 years of age. The consent judgment of divorce awarded the parties joint legal and physical custody of their children, with an equal number of overnights. Plaintiff is self-employed. Based on tax information that plaintiff provided to the Friend of the Court (FOC), the Uniform Child Support Order (UCSO) required plaintiff to pay monthly child support of $30 for both children.

In July 2014, defendant moved to set aside the consent judgment of divorce on the basis of plaintiff's alleged misrepresentations concerning income, property values, attorney representation, and her qualification for spousal support. Defendant further argued that the misrepresentations resulted in the child support recommendation of $30 per month and thus requested "appropriate" child support. Testimony at the evidentiary hearing revealed that the parties agreed, before the consent judgment was entered, that plaintiff would pay defendant additional monthly support

---

[1] *Bruski v Moja*, unpublished order of the Court of Appeals, entered August 1, 2024 (Docket No. 368916).

"under the table" until both kids were 18.[2] Defendant admitted that this arrangement was made so that she could continue to qualify for government assistance. Defendant claimed she instructed plaintiff to stop the payments after a year because she was worried about the legal consequences. The trial court denied the motion to set aside the judgment, but referred the child support issue to the FOC for investigation and recommendation.

In October 2014, the FOC issued its recommendation that plaintiff pay monthly support of $238 for both children, retroactive to August 29, 2014—the date of the trial court referral to the FOC. Defendant filed extensive objections asserting, *inter alia*, that plaintiff had grossly underreported his income. A hearing was held in December 2014. On December 9, 2014, the court entered a UCSO modification increasing defendant's monthly child support to $238 for both children effective August 29, 2014. Defendant did not file objections or otherwise move for relief from the order.

Thereafter, defendant pursued discovery regarding plaintiff's income. In April 2015, the trial court ordered that "defendant may proceed in the ordinary course with discovery, and may elect to file a motion for modification of child support if discovery or other change of circumstances justifies" it.

In January 2019, plaintiff moved to place the matter on the no-progress docket. Plaintiff asserted that "discovery has dragged on since February 29, 2016 without Defendant motioning this court for hearing after discovery was completed[.]" In response, defendant argued that a motion was unnecessary because her 2014 objection to the FOC recommendation was still pending before the trial court. The trial court denied plaintiff's motion, noting that it had continuing jurisdiction over the child support issue. The trial court also denied defendant's request for dates for an evidentiary hearing absent a motion.

In February 2022, defendant moved to increase child support. The parties stipulated to refer the matter to the FOC for a recommendation. In April 2022, the FOC recommended a modification to $538 per month for AB,[3] effective February 9, 2022—the date defendant filed her motion. Defendant filed objections in May 2022, arguing that the modification should be retroactive to August 29, 2014 and that the effective date for support for just one child should be June 2020, or the date that JB graduated from high school, whichever was later. The parties briefed the retroactivity issue and the trial court scheduled an evidentiary hearing. Prior to the hearing, defendant filed a memorandum asserting that the retained earnings of plaintiff's company should be included in plaintiff's income for purposes of determining child support.

An evidentiary hearing was held. Both parties testified and presented testimony from their accounting experts. Defendant's expert, John Faulman, CPA, testified that he reviewed plaintiff's corporate and personal financial records to help determine whether all of the income available for support was identified and included in the FOC's child support recommendation. He noted that

---

[2] Defendant maintained that the additional monthly payments were spousal support, but plaintiff maintained the payments were child support.

[3] JB was over 18 years old and thus was not included in the support recommendation.

the corporation's cash reserves increased every year, but plaintiff's W-2 wages did not increase. By 2021, the corporation had $278,472 in cash reserves. Faulman opined that $12,500 was a reasonable amount of operating capital for a business to keep on hand, and anything above that amount should have been distributed through wages or rent. But Faulman could not provide a basis for the $12,500 figure other than it was suggested by another member of his firm. He also conceded that corporations generally have working capital and that the amount of capital is dependent on the particular business. Faulman did not calculate plaintiff's income for purposes of child support for 2016 through 2021; he stated that was the duty of the FOC. He maintained that his task was simply to identify areas that the FOC should consider in assessing plaintiff's income.

Plaintiff's expert, Jerome Kieliszewski, CPA, testified that he had prepared the taxes for plaintiff's corporation since its inception in 2000. Kieliszewski provided a detailed explanation of plaintiff's income from 2014 through 2021 based on plaintiff's personal and corporate income tax returns. He opined that the FOC's 2014 calculation of plaintiff's net monthly income was too high, but stated that plaintiff's income increased in 2016 and continued to increase through 2021. Kieliszewski calculated plaintiff's income available for support, which included the corporation's taxable income, plaintiff's W-2 wages, unemployment compensation, rent, interest, and depreciation add-back. Kieliszewski explained that as plaintiff's business became more profitable, he was able to pay himself more. He opined that the corporation should retain approximately $300,000 in cash reserves—$120,000 in working capital to cover six months of business expenses for the corporation's modular home-setting business and an additional $200,000 for the corporation's loan business.

Plaintiff proposed that the trial court adopt and implement the 2022 FOC recommendation retroactive to February 2022. Defendant argued that support should be modified retroactively to July 2014. Defendant further asserted the corporation's end-of-year cash balance in excess of $12,000 should be included in calculating plaintiff's income available for support.

On June 6, 2023, the trial court issued an opinion and order adopting the FOC's child support recommendation retroactive to February 2022. The trial court rejected defendant's argument that the 2014 UCSO was a temporary order, concluding that the order, on its face, resolved child support and any modification of the order required a motion. The trial court noted that its finding was consistent with the April 2015 order that directed defendant to move to modify the support order if discovery or other change of circumstances justified it. The trial court concluded that plaintiff did not have the notice required by MCL 552.603(2) for retroactive modification until defendant moved to modify support in February 2022. The court also rejected defendant's argument that support should be retroactive under MCL 552.603b, concluding that there was no evidence to support that plaintiff misstated his income with the knowledge and intent required by MCL 552.603b. Finally, the court concluded that the corporation's retained earnings were business related and reasonable:

> Plaintiff's business had expanded from "setting" mobile or modular homes, i.e., performing the site and related work necessary to place a preconstructed home on the building site, to also include lending money to others. Defendant's claim was Plaintiff's retained earnings of $278,000 was excessive and the income should have been disbursed and included in Plaintiff's income for purposes of calculat[ing] his child support obligation. However, Plaintiff's accountant for his business testified

"at any one point and time you got $120,000 worth of working capital for operations and $200,000 to loan out to various people to increase your business to generate more profits." . . . The testimony supports finding the retained earnings were business related and reasonable.

This appeal followed.

## II. STANDARDS OF REVIEW

"Generally, child support orders, including orders modifying child support, are reviewed for an abuse of discretion." *Clarke v Clarke*, 297 Mich App 172, 178-179; 823 NW2d 318 (2012). "An abuse of discretion occurs when a court selects an outcome that is not within the range of reasonable and principled outcomes." *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007) (cleaned up). "[W]hether the trial court properly applied the [Michigan Child Support Formula] presents a question of law that we review de novo." *Clarke*, 297 Mich App at 179. "On the other hand, factual findings underlying the trial court's decisions are reviewed for clear error." *Id.*; see also MCR 2.613(C). "A finding is clearly erroneous if this Court, on all the evidence, is left with a definite and firm conviction that a mistake was made . . . ." *Stallworth*, 275 Mich App at 284. In reviewing factual findings, this Court must give regard to "the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C).

## III. RETROACTIVE MODIFICATION UNDER MCL 552.603(2)

Defendant argues that the trial court erred by failing to retroactively modify child support to July 2014 under MCL 552.603(2). We disagree.

Generally, a child support order is not subject to retroactive modification. See MCL 552.603(2).[4] See also *Clarke,* 297 Mich App at 187. However, MCL 552.603(2) allows for retroactive modification of child support obligations "with respect to a period during which there is pending a petition for modification, but only from the date that notice of the petition was given to the payer or recipient of support." Additionally, temporary support orders entered under MCR 3.207(C) may be retroactively modified. MCL 552.603(3); *Proudfit v O'Neal*, 193 Mich App 608, 611; 484 NW2d 746 (1992). And the parties may agree to retroactive modification. MCL 552.603(5). This Court has refused to allow retroactive modification of support orders, except as provided in MCL 552.603. *Malone v Malone,* 279 Mich App 280, 288-289; 761 NW2d 102 (2008).

---

[4] That subsection provides: "(2) Except as otherwise provided in this section, a support order that is part of a judgment or is an order in a domestic relations matter is a judgment on and after the date the support amount is due as prescribed in section 5c, with the full force, effect, and attributes of a judgment of this state, and is not, on and after the date it is due, subject to retroactive modification. No additional action is necessary to reduce support to a final judgment. Retroactive modification of a support payment due under a support order is permissible with respect to a period during which there is pending a petition for modification, but only from the date that notice of the petition was given to the payer or recipient of support."

In this case, the trial court determined that the December 9, 2014 UCSO and the April 2015 order resolved the child support issue raised in defendant's July 2014 motion. Defendant argues that the December 2014 order was temporary and her July 2014 modification request was pending at the time of the July 2023 order. We find no merit in this argument. MCR 3.207(C)(4) requires that "[a] temporary order must state its effective date and whether its provisions may be modified retroactively by a subsequent order." The 2014 UCSO was clearly labeled as a modification, not a temporary order. It also did not state that its provisions could be modified retroactively; rather, it stated that the support modification was effective August 29, 2014. "[A] court speaks through its orders." *Luscombe v Shedd's Food Products Corp*, 212 Mich App 537, 540; 539 NW2d 210 (1995). Defendant did not object to the 2014 UCSO. Defendant also did not seek relief from the order on the basis of a mistake under MCR 2.612(C)(2).[5] Additionally, the April 2015 order made it clear that there was not a pending motion because it invited defendant "to file a motion for modification of child support if discovery or other change of circumstances justifies" it. Defendant did not object to the April 2015 order.

Although defense counsel orally requested an evidentiary hearing in January 2019, the trial court denied the request absent a motion. At that time, the court noted that discovery had continued for five years without the filing of a substantive motion. Despite the court's nudging, defendant waited three more years before finally moving to modify child support and requesting an evidentiary hearing.

In light of these facts, the trial court did not clearly err by finding that plaintiff could have reasonably believed that there was not a petition for modification of child support before the court until defendant moved for modification in February 2022. Accordingly, the trial court did not abuse its discretion by declining to retroactively modify support beyond February 2022.

## IV. CORPORATE CASH RESERVES

Defendant asserts that there is no legitimate business purpose for plaintiff's corporation to retain significant business and thus the trial court erred by failing to include the undistributed profits in plaintiff's income. We disagree.

"In determining the appropriate amount of child support, a trial court must presumptively follow the Michigan Child Support Formula (MCSF)." *Carlson v Carlson*, 293 Mich App 203, 205; 809 NE2d 612 (2011) (cleaned up); see also MCL 552.605(2). The initial step is to determine each party's net income by considering all sources of income. *Id*. The term "net income" is defined as "all income minus deductions and adjustments permitted by this manual." 2021 MCSF 2.01(A). Income is broadly defined to include wages and "[e]arnings generated from a business, partnership, contract, self-employment . . . or from rentals." 2021 MCSF 2.01(C)(1)-(2). The MCSF further cautions, "Income (or losses) from a corporation should be carefully examined to determine the extent to which they were historically passed on to the parent or used merely as a tax strategy." 2021 MCSF 2.01(C)(2)(a). Income includes perks such as the personal use of a

---

[5] MCR 2.612(C)(1)(a) authorizes a court to relieve a party from an order on the basis of a mistake. However, the party must file a motion seeking relief within a year after the order was entered. MCR 2.612(C)(2).

company. 2021 MCSF 2.01(D), 2.01(E)(4)(b). For self-employed parents or business owners, the MCSF cautions that personal loans are presumed to be redirected income unless otherwise rebutted. 2021 MCSF 2.01(E)(4)(c)(i). The same is true for payments made to friends or relatives of the parent. 2021 MCSF 2.01(E)(4)(c)(ii). Further, certain tax deductions should be added back into a parent's income for the purposes of determining child support, including rent and depreciation for real estate, home offices, and personal vehicles. 2021 MCSF 2.01(E)(4)(e)(i), (ii), and (iii).

2021 MCSF 2.01(E)(4)(d) addresses reduced or deferred income as follows:

Because a parent's compensation can be rearranged to hide income, determine whether unnecessary reductions in salaries, fees, or distributed profits have occurred by comparing amounts and rates to historical patterns.

(i) Unless the business can demonstrate legitimate reasons for a substantial reduction in the percentage of distributed profits, use a three-year average to determine the amount to include as a parent's income.

(ii) Unless a business can demonstrate legitimate reasons for reductions (as a percentage of gross business income) in salaries, bonuses, management fees, or other amounts paid to a parent, use a three-year average to determine the amount to include as a parent's income.

Defendant contends that plaintiff failed to provide a legitimate business reason for the retention of significant business profits. She relies on the testimony of her accounting expert, Faulman, who opined that $12,500 was a reasonable amount of operating capital for a business to keep on hand, and anything above that amount should have been distributed through wages or rent. But Faulman could not provide a basis for the $12,500 figure other than it was suggested by another member of his firm. Moreover, Faulman did not calculate plaintiff's income available for child support, stating that was the duty of the FOC. He asserted that his task was simply to identify areas that the FOC should consider in assessing plaintiff's income.

On the other hand, plaintiff's expert, Kieliszewski, provided detailed testimony regarding the figures in plaintiff's personal and corporate returns from 2014 through 2021, which he maintained were accurately reported. Kieliszewski calculated the income that plaintiff had available for child support purposes for each year, which included the corporation's taxable income, plaintiff's W-2 wages, unemployment compensation, rent, interest, and the depreciation add-back. Kieliszewski opined that the $12,500 figure suggested by Faulman was not reasonable because that was less than one month of expenses. Kieliszewski testified that a corporation should have six months of reserve for business operating expenses. Utilizing plaintiff's 2019 corporate tax returns that reflected approximately $250,000 for business expenses and relying on the historical practice of the business's loan activity, Kieliszewski explained that plaintiff's corporation should have at least $300,000 in cash reserves—$200,000 to lend to generate more profit and another $120,000 in working capital for operations. Although Kieliszewski agreed that lending out the cash on hand, keeping it in the business, or disbursing it to plaintiff to pay more child support would all be legitimate choices, he ultimately opined that the corporation should have a total of at least $300,000 in cash reserves for the business that it conducted.

Relying on Kieliszewski's testimony, the trial court found that "the retained earnings were business related and reasonable." This was a classic battle of the experts. Defendant's expert admitted that he had no support for his $12,500 figure that he maintained would be a reasonable amount for plaintiff's corporation to retain in cash reserves. Conversely, plaintiff's expert prepared plaintiff's corporate taxes for more than two decades, was familiar with the business's finances, and provided a detailed explanation of his calculations. Giving deference to the trial court's ability to judge the credibility of the witnesses, we are not left with a definite and firm conviction that a mistake was made. See MCR 2.613(C); *Stallworth*, 275 Mich App at 284. See also *People v Unger*, 278 Mich App 210, 240; 749 NW2d 210 (2008) ("When the expert testimony is relevant to a substantial, disputed issue in the case, and each expert's testimony is otherwise competent, resolution of the conflict between the experts must be left solely to the finder of fact.") Accordingly, the trial court did not abuse its discretion by adopting the FOC's child support recommendation.

Finally, because we conclude that there was no evidence to support that plaintiff misrepresented his income, the trial court did not abuse its discretion by refusing to apply MCL 552.603b to retroactively modify support beyond February 2022.

Affirmed.

/s/ Sima G. Patel
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron

-7-