*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS LYONS,

        Plaintiff-Appellant,

v

SHANNON LYONS,

        Defendant-Appellee.

UNPUBLISHED
May 21, 2026
11:55 AM

No. 373664
Kent Circuit Court
LC No. 19-02379-DM

Before: WALLACE, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

The sole issue in this matter, involving the calculation of child support obligations, is whether the trial court should have considered a second income earned by defendant when making that calculation. Because plaintiff did not offer any evidence regarding the amount of defendant's second income, we find that the court did not abuse its discretion, and we affirm the trial court's order.

## I. FACTS AND PROCEDURAL HISTORY

The parties in this matter were divorced in 2019. On February 25, 2024, a referee heard plaintiff's objections to a Friend of the Court (FOC) child support recommendation. In part, plaintiff believed that defendant's income may have increased since the FOC investigation. Defendant stated that she worked fulltime at a healthcare center and that she had reported her healthcare center income during the FOC investigation. She also stated that she worked "overtime" at a restaurant two weekends (20 hours) each month. The referee stated that defendant's income from the healthcare center and restaurant should be used to calculate child support. He requested that defendant provide updated information about her income to the FOC. Defendant, in turn, complained that plaintiff was only imputed income in the amount of $12 an hour for 35 hours each week. The referee indicated that he would hold an evidentiary hearing on these issues.

No evidentiary hearing was actually held. Rather, the referee held settlement conferences on April 17, 2024 and May 30, 2024, which were not held on the record. At the first conference, the referee found that $12 an hour was an appropriate income to impute to plaintiff. At the second

conference, the referee found that defendant had stopped working at the restaurant. He further found that defendant worked 40 hours each week, earning slightly over $20 an hour, at her regular job. This hourly amount would be used to calculate her income. On June 24, 2024, the referee signed a proposed child support order.

Plaintiff objected to the proposed order. Plaintiff asserted that defendant lied about her employment at the restaurant. He believed that defendant continued to work at the restaurant. Plaintiff also objected to being imputed income at the rate of $12 an hour for 40 hours each week. He noted that, in 2022, income was imputed to him at the rate of $12 an hour for 35 hours each week and that the only change since then was that he had an additional child (with his current wife) for whom he was the primary caregiver. Plaintiff also complained that the referee did not articulate any findings on the imputation factors.

In her response to the objection, defendant stated that she had not attended the settlement conferences, but that once she learned that the referee believed she was no longer employed at the restaurant, she contacted her prior attorney for clarification. The prior attorney advised defendant that she would correct the mistake. Defendant acknowledged to the court that she continued to work part-time at the restaurant.

At the September 30, 2024 de novo hearing, the trial court informed the parties that it had a meeting at 12:00 p.m., but also mentioned that it could reconvene the hearing at 1:00 p.m. if it was not finished by noon. The hearing started at 10:30 a.m.[1] In addition to plaintiff's objections to the proposed child support order, the trial court heard a motion filed by the FOC to determine responsibility for uninsured health care expenses.

The court informed the parties that it reviewed an affidavit from defendant's former attorney that was attached to defendant's response to plaintiff's objections. In the affidavit, defendant's former attorney stated that she attended the May 30, 2024 settlement conference, along with plaintiff's former attorney, i.e., only the attorneys who represented the parties at that time appeared before the referee. She further averred that she told the referee that defendant did not work at the restaurant, and that her client never actually told her this, but instead, she misunderstood defendant's "income based on [their] email communication regarding paycheck stubs." The court stated that, given defendant's former attorney's affidavit, "we absolutely need to talk about this today."

---

[1] We note that the de novo hearing was scheduled to begin at 9:00 a.m. The hearing transcript is unclear as to why it began at 10:30 a.m., but the record suggests that counsel for defendant thought the matter was scheduled to begin at 11:00 a.m. In fact, 11:00 a.m. was the start time for the FOC's motion to determine responsibility for uninsured healthcare expense. When the hearing began, the court started with the preliminary matters described herein, addressed the FOC motion, and then immediately turned to the issues pertaining to the de novo review. The hearing ended at 12:06 p.m.

The court then heard testimony regarding the uninsured medical expenses. An FOC worker and plaintiff testified on this topic, but defendant did not. The court concluded that plaintiff did not have to reimburse defendant for the expenses.

When the court thereafter turned to the child support issue, it informed the parties that approximately 30 minutes remained until the court had to stop for a meeting, after which the matter could reconvene at 1:00 p.m., if needed.

Plaintiff's counsel summarized the objections to the proposed child support order. The court stated that it would impute income to plaintiff and that the question was the amount of income to impute, after which arguments were made by parties. The court then asked plaintiff's counsel if he had anything else to say. Plaintiff's counsel stated that there had been some confusion about defendant's employment with the restaurant and he believed that the confusion had "been shored up." The court asked defendant if she was still employed with the restaurant, in response to which defendant said that she had always been employed there and that she had provided all her pay stubs to the FOC and plaintiff's prior attorney.

The court asked the parties if they wanted to take testimony. Plaintiff indicated that he wanted to testify regarding the imputation factors, and the court then took his testimony regarding that issue. After that testimony, the court asked plaintiff if he had any other witnesses or evidence to present. Rather than offer any additional evidence, plaintiff asked the court to consider increasing his parenting time, but the court reminded him that parenting time was not an issue currently before the court.

The court then asked defendant if she wanted to testify. Defendant asked whether she could testify regarding a document that was in the FOC file that indicated plaintiff made $15 an hour at a former job, and plaintiff's counsel objected to any testimony regarding the document. When the court informed defendant that she would not be able to testify regarding the document, defendant indicated that she would not testify.

The court then informed the parties that she ran the pertinent numbers through "the My Child Support calculator," and that the numbers she used imputed income to plaintiff in the amount of $15 an hour for 35 hours each week, which took into account the fact that he had the parties' children after school on Tuesdays and Fridays. The court provided a copy of its calculations to the parties and plaintiff stated that "looking at the—the income for [defendant], it's the same as it was calculated without her pay from her second job." The court responded that it had not heard any testimony or evidence "about what that pay is." The court then asked defendant how much she earned at the restaurant. Defendant responded that her income from the restaurant varied; she worked "every other Saturday and maybe Sunday." Defendant had her 2023 W-2 "[s]omewhere," and brought with her the two most recent paystubs. The following exchange then occurred between the court and plaintiff's counsel:

> *The Court*: I mean, I can average that. But again, this didn't come into the record.
>
> [*Plaintiff's Counsel*]: I didn't get—I mean she—she didn't offer testimony—
>
> * * *

*The Court*: But you could have called her as a witness.

[*Plaintiff's Counsel*]: Well I was planning on just cross examining her, Your Honor. I wasn't going to call her as my witness.

*The Court*: But that's the—like that's the risk you take if you don't call someone as an adverse—

[*Plaintiff's Counsel*]: But she testified, Your Honor. I can still cross-examine her. I wasn't asked if I could.

*The Court*: Right. But she didn't testify in this portion of the hearing.

[*Plaintiff's Counsel*]: She did offer testimony.

*The Court*: No she—she offered testimony in the medical portion. But—

[*Plaintiff's Counsel*]: I think she started out by asking a question, then she—

*The Court*: Well, you objected, and I upheld that, so I didn't consider what she said. I mean—

[*Plaintiff's Counsel*]: Your Honor, I thought a de novo—well the Court's reading, you know, this is her own—her prior attorney and her own admission reading into the record that, yeah, it was a mistake. I work at [the restaurant]. To exclude that at this point I think would—

*The Court*: What was your—

[*Plaintiff's Counsel*]: —that's the whole reason we're here, Your Honor.

*The Court*: [Plaintiff's counsel], it's your client's objection. Once you rest your case, if the other party chooses not to testify, you don't get to cross examine. That's why you call them as an adverse direct witness. I mean proofs are closed.

[*Plaintiff's Counsel*]: Well I—I do have a couple questions for [defendant].

*The Court*: But proofs are closed. So, I'm not—but there is—okay. I just wanted to make sure that was correct.

*Defendant*: If it helps, I have paystubs from my current employer, which is less than what I was making before and also [the restaurant] here if you want to use it to run the numbers.

*The Court*: I mean, I have to go.

*Defendant*: Right.

*The Court*: I'm five minutes late for a meeting. So—

*Defendant*: I have no objection to the thing that you gave us.

*The Court*: If you want to—I mean proofs are closed. So that will be the order of the court. The total is $396 a month . . . .

On October 28, 2024, the court entered an order that imputed income to plaintiff in the amount of $15 an hour for 35 hours each week. The order further provided that plaintiff's child support obligation was stated in an attached uniform child support order. The attached uniform child support order required plaintiff to pay $396 in child support each month.

Plaintiff moved for reconsideration of the October 28, 2024 order, arguing that the trial court erred by refusing to include defendant's second income in the child support formula and imputing income to him at the rate of $15 an hour. Plaintiff also moved the trial court to include defendant's second income in the child support formula. In a November 22, 2024 order, the court denied those motions. The court indicated that plaintiff did not attempt to introduce evidence regarding defendant's second income at the September 30, 2024 hearing until "he realized he had not done what he should have done. So, he put on his case. He closed his case."

Plaintiff, proceeding *in propria persona*, subsequently filed an application for leave to this Court arguing that the trial court erred by not considering defendant's second income when determining his child support obligation and also by imputing income to him in the amount of $15 per hour for 35 hours per week. We initially denied plaintiff's application,[2] but upon reconsideration, this Court granted plaintiff's application for leave to appeal, limited to the issue of whether the trial court erred by not considering defendant's second income.[3]

## II. STANDARD OF REVIEW

This Court reviews child support orders, including orders modifying child support, for an abuse of discretion. *Clarke v Clarke*, 297 Mich App 172, 178-179; 823 NW2d 318 (2012). A trial court's decision to admit or exclude evidence is likewise reviewed for an abuse of discretion. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Id*. The proponent of evidence has the burden of establishing that it is both relevant and admissible. *Id*.

Whether the trial court has properly applied the Michigan Child Support Formula (MCSF) is a question of law that is reviewed by this Court de novo. *Clarke*, 297 Mich App at 179.

---

[2] *Lyons v Lyons*, unpublished order of the Court of Appeals, entered July 25, 2025 (Docket No 373664). We note that the dissent would have granted the application, but only as to the issue pertaining to defendant's second job. *Id*. (YATES, J., dissenting).

[3] *Lyons v Lyons*, unpublished order of the Court of Appeals, entered September 11, 2025 (Docket No. 373664).

## III. ANALYSIS

Plaintiff argues that the trial court erred by not considering defendant's second income, i.e., her income from the restaurant, when determining his child support obligation.

A trial court "shall order child support in an amount determined by application of the child support formula." MCL 552.605(2). The first step in determining a child support obligation is to determine each parent's income. 2021 MCSF 2. A parent's income includes "[w]ages, overtime pay, commissions, bonuses, or other monies from all employers or as a result of any employment." 2021 MCSF 2.01(C). "Where monthly income varies due to seasonal factors (e.g., overtime, second jobs, bonuses, or profit sharing) calculate income using information from at least the preceding twelve months." 2021 MCSF 2.02(A).

The parties agree that defendant had a second income, i.e., that she worked at the restaurant every other weekend. The trial court did not consider defendant's second income when determining plaintiff's child support obligation because plaintiff—the one who objected to the referee's proposed child support order—did not present any evidence regarding defendant's second income. Indeed, plaintiff did not seek to question defendant about her second income until after the trial court determined his child support obligation.[4]

Plaintiff relies on three rules of evidence in support of his argument that the trial court should have allowed him to question defendant after it made its child support determination, none of which provide a basis for finding that the trial court abused its discretion.

First, plaintiff cites MRE 614(a), which provides that "[t]he court may call a witness on its own or at a party's request. Each party is entitled to cross-examine the witness." According to plaintiff, because the trial court "directly examined" defendant, he should have been allowed to cross-examine defendant about her second income. However, plaintiff fails to mention that defendant was never sworn as a witness and, when asked whether she wished to testify, defendant declined after being informed that she would not be permitted to provide testimony regarding a document in the FOC file as described above. See MRE 603 ("Before testifying, a witness must give an oath or affirmation to testify truthfully.").

Second, plaintiff cites MRE 611(a) and (b). MRE 611, which concerns the mode and order of examining witnesses and presenting evidence, provides, in pertinent part:

> (a) Control by the Court; Purposes. The court must exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:
>
> (1) make those procedures effective for determining the truth;

---

[4] We note that, when the court turned to defendant to inquire as to whether she would testify, plaintiff did not object or otherwise indicate that he had not rested.

(2) avoid wasting time; and

(3) protect witnesses from harassment or undue embarrassment.

(b) Appearance of Parties and Witnesses. The court must exercise reasonable control over the appearance of parties and witnesses so as to:

(1) ensure that the fact-finder can see and assess their demeanor; and

(2) ensure their accurate identification.

According to plaintiff, the trial court chose to ignore the fact that defendant had a second income and refused to allow him to cross-examine defendant because the court was in a rush to get to its meeting. MRE 611 provides no support for plaintiff's argument. It has no relevance to whether a trial court should allow a party to question a witness after the trial court has rendered its decision. MRE 611 pertains to the examination of witnesses and the presentation of evidence during a hearing and, as detailed above, defendant was not examined under oath at the hearing. As for plaintiff's allegation that the trial court rushed the proceedings, we note that the court indicated that it would adjourn the hearing if it was not finished by noon, and would reconvene at 1:00 p.m., if necessary. But the hearing was finished by 12:06 p.m., meaning there was no need to reconvene.

Third, plaintiff cites to MRE 901, which governs authentication of evidence. MRE 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what its proponent claims it is." According to plaintiff, the trial court erred when it did not allow evidence to be presented regarding defendant's second income because defendant "practically plead[ed]" with the court to take her paystubs. Plaintiff's reliance on MRE 901 is misplaced. Again, MRE 901 provides the procedures for authenticating evidence; it is not relevant to whether a trial court should allow a party to question a witness after it has already rendered its decision.

In summation, plaintiff offered no proof of the amount of defendant's second income at the de novo hearing, despite the fact that defendant sent her pay stubs from that weekend job to FOC and plaintiff's prior attorney. After the trial court sustained plaintiff's objection to the evidence offered by defendant, the proofs were closed, after which the trial court made its calculations and issued its decision. The transcript for the hearing suggests that plaintiff thought defendant would testify during her presentation of proofs, but when she declined to testify, plaintiff never thereafter formally moved the court to reopen the proofs. None of the authority relied upon by plaintiff supports his assertion that the trial court abused its discretion.

Affirmed.

/s/ Randy J. Wallace
/s/ Anica Letica
/s/ Kathleen A. Feeney